UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In the Matter of the Complaint<br><br>of<br><br>SEASTREAK, LLC, as Owner of the Vessel<br>SEASTREAK WALL STREET for<br>Exoneration from or Limitation of Liability | Civil Index No.:<br>2:13-cv-00315-WJM-MF |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO STRIKE THE AFFIRMATIVE DEFENSE THAT THE FLOTILLA RULE APPLIES AND TO STRIKE THE JURY DEMAND**

**BLANK ROME LLP**
301 Carnegie Center, 3rd Floor
Princeton, New Jersey 08540
William R. Bennett, III, Esquire
Alan M. Weigel, Esquire *(admitted pro hac vice)*
Kevin J. Bruno, Esquire
New Jersey Resident Partner
(609) 750-7700 (Phone)
(609) 897-7395 (Fax)
KBruno@BlankRome.com (e-mail)

-and-

**KAUFMAN DOLOWICH & VOLUCK LLP**
Court Plaza South, 21 Main Street, Suite 251
Hackensack, New Jersey 07601
Gino A. Zonghetti, Esquire
(201) 708-8233 (Phone)
(201) 488-6652 (Fax)
gzonghetti@kdvlaw.com (e-mail)

***Attorneys for Plaintiff, SEASTREAK, LLC***

TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................1

FACTS ...........................................................................................................................2

ARGUMENT .................................................................................................................3

POINT I .....................................................................................................................3

THE RULE 12(F) STANDARD TO STRIKE LEGALLY INSUFFICIENT
DEFENSES IS MET HERE ........................................................................3

POINT II ....................................................................................................................4

THE FLOTILLA RULE DOES NOT APPLY IN THIS CASE BECAUSE
THE ALLISION INVOLVED A SINGLE VESSEL..................................................4

POINT III ...................................................................................................................10

A JURY TRIAL IS UNAVAILABLE AS A MATTER OF LAW BECAUSE
THIS IS AN ADMIRALTY CASE PROCEEDING UNDER THE
LIMITATION ACT AND THERE IS NO SUBJECT MATTER
JURISDICTION BASED ON DIVERSITY ............................................................10

CONCLUSION.............................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*,
   377 F.2d 724 (5th Cir. 1967) ...........................................................................5, 6

*Deep Sea Tankers, Ltd. v. The Long Branch*,
   258 F.2d 757 (2d Cir. 1958).................................................................................6

*F.D.I.C. v. Modular Homes, Inc.*,
   859 F. Supp. 117 (D.N.J. 1994) ...........................................................................4

*Foret v. Transocean Offshore (USA), Inc.*,
   No. 09-4567, 2011 U.S. Dist. LEXIS 96679 (E.D. La. Aug. 29, 2011) ...............4, 7

*Glenside West Corp. v. Exxon Corp.*,
   761 F. Supp. 1100 (D.N.J. 1991) ..........................................................................4

*Gorman v. Cerasia*,
   2 F.3d 519 (3d Cir. 1993)................................................................................10, 11

*Grand Union Supermarkets of the V.I. v. H.E. Lockhart Mgmt.*,
   316 F.3d 408 (3d Cir. 2003)...............................................................................11

*In re Am. Commercial Lines, Inc.*,
   353 F. Supp. 872 (E.D. Ky. 1973) ....................................................................6, 7

*In re Complaint of Bankers Trust Co.*,
   651 F.2d 160 (3d Cir. 1981)................................................................................4

*In re Complaint of High Hook, Inc.*,
   No. 91-5138, 1992 U.S. Dist. LEXIS 8855 (E.D. Pa. May 29, 1992)...................12

*In Re Complaint Of Thomas Barsch, et al.*,
   No. 91-2170, 1994 AMC 1999 (D.N.J. Mar. 1, 1993)........................................12

*In re Complaints of Texaco Marine Services, Inc.*,
   No. 89-398, 1990 U.S. Dist. LEXIS 19956 (D. Del. Nov. 14, 1990)......................6

*In re Cross Contracting Co.*,
   454 F.2d 408 (5th Cir. 1972) ...............................................................................7

*In re Greenhill Petroleum Corp.*,
   No. 96-338, 1997 U.S. Dist. LEXIS 14189 (E.D. La. Sept. 10, 1997)................8, 9

*In re J.A.R. Barge Lines, L.P.*,
    307 F. Supp. 2d 668 (W.D. Pa. 2004)......................................................................10

*In re McCarthy Bros. Co./Clark Bridge*,
    83 F.3d 821 (7th Cir.), cert. denied, 519 U.S. 950 (1996)......................................10

*In re Midland Enterprises, Inc.*,
    296 F. Supp. 1356 (S.D. Ohio 1968) ..................................................................5, 6

*In re Untied States Dredging Corp.*,
    264 F.2d 339 (2d Cir. 1959)....................................................................................7

*In re War Admiral, L.L.C.*,
    No. 09-3217, 2011 U.S. Dist. LEXIS 133654 (E.D. La. Nov. 18, 2011) ................8

*Liverpool, Brazil & River Plate Steam Nav. Co. v. Brooklyn E. Dist. Terminal*,
    251 U.S. 48 (1919)..............................................................................................5, 7

*Petition of Western Transportation Company*,
    194 F.Supp. 834 (D.Ore. 1961)..............................................................................6

*Pickle v. Char Lee Seafood, Inc.*,
    174 F.3d 444 (4th Cir. 1999) ................................................................................11

*Reese v. Sparks*,
    760 F.2d 64 (3d Cir. 1985)....................................................................................12

*Sacramento Nav. Co. v. Salz*,
    273 U.S. 326 (1927)............................................................................................5, 7

*Standard Dredging Co. v. Kristiansen*,
    67 F.2d 548 (2d Cir. 1933)..................................................................................1, 6

*Steuart Inv. Co. v. Bauer Dredging Constr. Co.*,
    323 F. Supp. 907 (D. Md. 1971)........................................................................5, 8

*United States v. Sensient Colors, Inc.*,
    580 F. Supp. 2d 369 (D.N.J. 2008) ........................................................................4

## STATUTES

28 U.S.C. §1332..............................................................................................................11

28 U.S.C. § 1746............................................................................................................12

46 U.S.C. § 30501, *et seq.*....................................................................................1, 4, 10

**OTHER AUTHORITIES**

FED. R. CIV. P. 9 ...................................................................................................................11

FED. R. CIV. P. 12 ...............................................................................................................1, 3

FED. R. CIV. P. 38(e) ...........................................................................................................11

iv

## INTRODUCTION

Petitioner SeaStreak, LLC ("SeaStreak") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12(f)(2) of the Federal Rules of Civil Procedure, for an order striking the affirmative defenses of various claimants that the $7.6 million limitation fund established by Seastreak should be increased under the flotilla rule, and striking the jury demands made by various claimants.

Seastreak commenced this action pursuant to the Limitation of Liability Act, (hereinafter "Limitation Act") 46 U.S.C. § 30501, *et seq.,* on January 16, 2013 as a result of an allision on January 9, 2013, between its passenger ferry boat SEASTREAK WALL STREET (sometimes referred to herein as the "Vessel") and Pier 11, in Manhattan, resulting in alleged injuries to multiple passengers aboard the Vessel.   The Court approved an *ad interim* stipulation for value for the Vessel in the amount of $7.6 million, the value of Petitioner's interest in the ferry on the date of the allision.   The $7.6 million represents the potential limitation fund available to compensate the injured passengers.   To date, claims have been filed on behalf of forty-six separate passengers.  Also, Seastreak has settled nearly fifty claims.

Various claimants have mistakenly raised as an affirmative defense in their Answers that the "flotilla rule" or "flotilla doctrine"[1] applies to the allision and that as a result, the $7.6 million limitation fund must be increased to include not only the value of the SEASTREAK WALL STREET but also the value of every other ferry owned by SeaStreak, none of which were involved in the incident.   The allision underlying this Petition involved a <u>single</u> vessel, SEASTREAK WALL STREET, striking Pier 11.  As a matter of admiralty law, the flotilla rule

---

[1] A flotilla is a group of vessels operated together and engaged in the same venture.  *Standard Dredging Co. v. Kristiansen*, 67 F.2d 548, 549 (2d Cir. 1933).

is inapplicable to the instant case.  Accordingly, the affirmative defenses of claimants premised upon the flotilla rule must be dismissed, as a matter of law.

Most claimants also have erroneously demanded a jury trial on their claims.  As a matter of admiralty law, jury trials are not available in Limitation Act proceedings.    Accordingly, the claimants' jury demands must be dismissed, as a matter of law.

## FACTS

The passenger ferry SEASTREAK WALL STREET allided with Pier 11 in Manhattan on the morning of January 9, 2013 as it was approaching the pier for docking.  (*See* Verified Complaint For Exoneration From Or Limitation Of Liability ("Compl.") ¶ 3 (Doc. No. 1) attached as Exhibit "A" to the Declaration of William R. Bennett, Esq. dated August 27, 2013 ("Bennett Decl.").)[2]  The allision caused certain alleged injuries to a number of the three hundred and twenty six passengers on board the Vessel.  (Id. at ¶ 4.)

On January 16, 2013 SeaStreak filed a petition under the Limitation Act in this Court seeking to limit its liability to the value of its interest in the Vessel on January 9, 2013, $7.6 million.  (*Id*. at ¶¶ 7, 11.)  The Court approved an *ad interim* stipulation of value in the amount of $7.6 million.  (Doc. No. 3 (Ex. "B").)  The Court also set a deadline for the filing of claims of May 16, 2013.  (*Id.*)

Forty-six (46) claims were filed in the limitation action by the time of the claims deadline.  (Ex. "C.")  The value of the claims as pleaded well-exceeds the $7.6 million limitation fund.  (Id.)  Most of the claimants also filed Answers to SeaStreak's Complaint.

The Claim and Answer of Claimant John Urbanowicz ("Urbanowicz") is typical of many of the Claims and Answers filed by other claimants.  In his claim, Urbanowicz alleges that he

---

[2] For the Court's convenience, the pleadings relevant to this motion are attached as exhibits to the Bennett Declaration.

2

was a passenger on the SEASTREAK WALL STREET and that the allsion was caused by, among other things, the failure of SeaStreak to operate the Vessel "in a safe and proper manner, in accordance with principles of good seamanship" and "to maintain a safe and seaworthy vessel at the inception of, and during the duration of the voyage." (Doc. No. 9 (Ex. "D") at ¶¶ 2, 4, 6.)

Urbanowicz's Answer (Doc. No. 10 (Ex. "E") pleads as "Affirmative Defenses" that the security posted by SeaStreak is "inadequate pursuant to the 'flotilla doctrine' as it fails to account for the value of all vessels in fleet and their pending freight" (*Id.*, Aff. Def. ¶ 4); "the limitation fund must be increased pursuant to the 'flotilla doctrine'" (*Id.*, Aff. Def. ¶ 5); and that SeaStreak's Complaint should be dismissed for "failure to post adequate security equal to the value of all vessels involved in the completion or performance of the contract, plus pending freight, as said vessels are commonly owned, engaged in a single enterprise and under a single command." (*Id.*, Aff. Def. ¶ 8.) The allegation that the flotilla rule is applicable here is misplaced and based upon a fundamental misunderstanding of admiralty law.

Urbanowicz's Answer also requests a jury trial on his claim. (*Id.* at 5.) This request also is misplaced and based upon a fundamental misunderstanding of admiralty law.

## ARGUMENT

### POINT I

### THE RULE 12(F) STANDARD TO STRIKE LEGALLY INSUFFICIENT DEFENSES IS MET HERE

An affirmative defense constitutes a "defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true." BLACK'S LAW DICTIONARY 451 (8th ed. 2004). Federal Rule of Civil Procedure 12(f) provides, in relevant part, that "[t]he court may strike from a pleading an insufficient defense."

3

A motion to strike will be granted where the insufficiency of the defense is clearly apparent. *United States v. Sensient Colors, Inc.*, 580 F. Supp. 2d 369, 374 (D.N.J. 2008).

An affirmative defense is legally insufficient if it is not recognized as a legal defense to a cause of action, *F.D.I.C. v. Modular Homes, Inc.*, 859 F. Supp. 117, 120 (D.N.J. 1994), or where the defense cannot succeed under any set of facts which may be inferred from the allegations of the pleading. *Glenside West Corp. v. Exxon Corp.*, 761 F. Supp. 1100, 1115 (D.N.J. 1991).

In the present action, the affirmative defense asserted by certain claimants requiring application of the flotilla rule is insufficient as a matter of law and cannot succeed under any set of facts. Accordingly, it is respectfully submitted that the Court should strike those affirmative defenses from the claimants' answers.[3]

## POINT II

### THE FLOTILLA RULE DOES NOT APPLY IN THIS CASE BECAUSE THE ALLISION INVOLVED A SINGLE VESSEL

The Limitation of Liability Act, 46 U.S.C. §30505 (formerly 46 U.S.C. § 183(a)) provides that a vessel owners' liability shall be limited to the "value of the vessel and pending freight" for any act which occurs "without the privity or knowledge" of the owner. *See, e.g., In re Complaint of Bankers Trust Co.*, 651 F.2d 160, 169 (3d Cir. 1981). In order to initiate an action for limitation, the vessel owner is required to deposit with the court an amount equal to the value of the owner's "interest in the vessel and pending freight," or to post approved alternative security (commonly referred to as the "limitation fund"). 46 U.S.C. § 30511 (formerly 46 U.S.C. §185). The question of what constitutes the owner's interest in the vessel for purposes of establishing the limitation fund may involve the application of the so-called "flotilla rule" or

---

[3]   SeaStreak's motion is proper because the applicability of the flotilla doctrine may be determined by summary adjudication. *See Foret v. Transocean Offshore (USA), Inc.*, No. 09-4567, 2011 U.S. Dist. LEXIS 96679, *12-13 (E.D. La. Aug. 29, 2011).

4

"flotilla doctrine." *See Steuart Inv. Co. v. Bauer Dredging Constr. Co.*, 323 F. Supp. 907, 910-911 (D. Md. 1971).

The flotilla rule has arisen in "many and varied factual backgrounds" such that each case must be decided on its own facts. *Id.* Nevertheless, in concluding whether the value of one or more vessels should be included in the limitation fund, courts have often categorized the factual circumstances as one of a "pure tort situation" or a "consensual situation." *In re Midland Enterprises, Inc.*, 296 F. Supp. 1356 (S.D. Ohio 1968). *See also Sacramento Nav. Co. v. Salz*, 273 U.S. 326 (1927)(consensual); *Liverpool, Brazil & River Plate Steam Nav. Co. v. Brooklyn E. Dist. Terminal*, 251 U.S. 48 (1919)(pure tort). In determining whether the "pure tort situation" or the "consensual situation" exists, courts first look to see whether the breach of duty causing the accident was incidental to a contract. *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724 (5th Cir. 1967).

The pure tort situation is one in which the circumstances involve an injury to a third party to whom the vessel owner owes no contractual duty. *Liverpool Brazil & River Plate Steam Navigation Co.*, 251 U.S. at 50. In *Liverpool,* a tug boat to which two other vessels were attached (a car float and a disabled tug), collided with another vessel. The Supreme Court determined that for purposes of establishing the limitation fund, only the value of the "offending vessel" should be considered. *Id.* at 53. The court held that the vessels attached to the tug were not offending vessels, and that their values should not be added to that of the offending tug to establish the limitation fund. *Id.* at 52. Explaining the Court's holding, Justice Holmes wrote that "for the purposes of liability the passive instrument of the harm does not become one with the actively responsible vessel by being attached to it." *Id.*

5

This doctrine was restated in *Deep Sea Tankers, Ltd. v. The Long Branch*, 258 F.2d 757 (2d Cir. 1958), where two tugs, each with its own tow, caused the grounding of a tanker by interfering with its navigation.  The court held that only the two tugs could be held liable because the tows were merely "passive instruments of navigation" and "had no motive power of their own." *Id.* at 773.

Thus, in a pure tort situation, where only one vessel is alleged to have been involved in the tort, the flotilla rule is inapplicable.  Only the value of that vessel which is alleged to be the offending vessel, which is the one causing the injury, will be required to be surrendered into court to establish the limitation fund.  *In re Am. Commercial Lines, Inc.,* 353 F. Supp. 872, 874-75 (E.D. Ky. 1973) ("[i]t is clearly the law that where the libel sounds in tort the flotilla rule does not apply").  *See also In re Complaints of Texaco Marine Services, Inc.*, No. 89-398, 1990 U.S. Dist. LEXIS 19956, *23-24 (D. Del. Nov. 14, 1990)(motion to include value of barge in limitation fund denied where no contractual relationship between owner of pier and tug which damage it in a allision, even though barge berthed at pier for purposes of discharging cargo); *In Re Midland Enterprises, Inc.*, 296 F. Supp. 1356 (6th Cir. 1968) (in pure tort situation six undamaged barges part of tow but not part of flotilla for limitation fund).  Here, only one vessel, the SEASTREAK WALL STREET, was the offending vessel involved in the allision.

Where a contractual relationship exists between the limitation plaintiff and the claimant, however, courts have required the vessel owner to surrender, for purposes of establishing the limitation fund, all of the vessels <u>devoted to the performance of the contract between the parties at the time of the fault causing the loss</u>.  *See Brown & Root Marine Operators,* 377 F.2d at 727 (emphasis added); *Petition of Western Transportation Company*, 194 F.Supp. 834 (D.Ore. 1961); *Standard Dredging Company v. Kristiansen*, 67 F.2d 548 (2d Cir. 1933).  Each of the vessels of

6

a flotilla becomes a part of the contract, thus, courts have reasoned that a party to a contract should not be permitted to limit its liability to less than the value of all of the vessels needed to complete the promise. *American Commercial Lines, Inc.*, 353 F. Supp. at 874.

In *Sacramento Nav. Co.*, 273 U.S. at 332, the Supreme Court addressed the situation in which the claimant in limitation had a contractual relationship with the vessel owner, and distinguished the *Liverpool* case by saying:

> There the libel was for an injury to a ship in no way related to the flotilla. It was a pure tort; no contractual obligations were involved; and the simple inquiry was, What constituted the 'offending vessel'? Here we must ask, What constituted the vessel by which the contract of transportation was to be effected? a very different question."

*Id.*

For the flotilla rule to be applicable, the vessels purported to make up the flotilla must, at the time of the fault giving rise to the limitation proceeding, be owned by the same person and also have been engaged in a common enterprise and under a single command. *Foret v. Transocean Offshore (USA), Inc.*, No. 09-4567, 2011 U.S. Dist. LEXIS 96679, * 11 (E.D. La. Aug. 29, 2011) (*citing Cenac Towing Co., Inc. v. Terra Res., Inc.,* 734 F.2d 251, 254 (5th Cir. 1984)). Here the SEASTREAK WALL STREET was under the command of a single licensed Captain, while the other ferries owned by SeaStraek were operated by other different licensed Captains.

In respect to the "common enterprise" requirement, a flotilla will only be found to have existed where each vessel alleged to be part of the flotilla was engaged in the same venture <u>at the same time</u> and where all of the attending vessels were necessary for performance of their owner's contract. *In re Cross Contracting Co.*, 454 F.2d 408, 411 (5th Cir. 1972); *In re Untied States Dredging Corp.*, 264 F.2d 339 (2d Cir. 1959). Thus, the work of each vessel making up a

7

flotilla must be "necessary to performance of the contract."  *In re War Admiral, L.L.C.*, No. 09-3217, 2011 U.S. Dist. LEXIS 133654, *12 (E.D. La. Nov. 18, 2011).

Further, the flotilla doctrine applies only to those vessels actually engaged and devoted to the performance of the contract or common enterprise in question <u>at the time</u> of the fault giving rise to the limitation proceeding.  *Steuart Inv. Co.*, 323 F. Supp. at 911.  In *Steuart*, the petitioner's dredge was not required to be surrendered since "[f]or purposes of argument, even if it was found that the breach of duty was incidental to a contract, the injury and fault were too remote to require the surrender of the dredge."  *Id.*  The court found that the dredge was in no way connected with the fault.  Thus, the owner was not required to surrender anything more than "the vessels devoted as a unitary instrumentality to the undertaking <u>at the time when the fault is committed</u>."  *Id.* (emphasis added).  *See also In re Greenhill Petroleum Corp.*, No. 96-338, 1997 U.S. Dist. LEXIS 14189, at *5 (E.D. La. Sept. 10, 1997) ("common venture" limited "to the particular task at hand, not all work contemplated by the contract").  Here, there was one vessel involved in the incident giving rise to the suit, not several vessels "devoted as a unitary instrumentality."

This rule was clearly set forth in *The George W. Pratt*, 76 F.2d 902, 904 (2d Cir. 1935).  In *Pratt*, a tow was performed in part by one tug and continued by another.  The towed barge sank while in the tow of the second tug.  It was shown at trial that the accident occurred as a result of the second tug's negligence.  The appellant sought to have the entire flotilla surrendered into the court since the barge had been a part of it while being towed up the river.  The court ruled otherwise, holding that no other tug was being used to perform the towage contract when the second tug's negligence occurred.  *Id.*  The court explained: "We think the rule is established that the vessels to be surrendered are those devoted to performance of the contract <u>at the</u>

686545.00614/7278083v.1

particular time when the fault which causes the loss is committed." *Id.* (emphasis added). Here, the only vessel involved at the time of the alleged fault was the SEASTREAK WALL STREET.

In the present matter, regardless whether the allision is analyzed as a pure tort situation or as a consensual situation, the flotilla rule does not apply and only the value of SEASTREAK WALL STREET properly establishes the limitation fund. It is without question that no other vessel in SeaStreak's fleet was involved in the allision other than SEASTREAK WALL STREET. Accordingly, only SEASTREAK WALL STREET can be considered the offending vessel.

To the extent claimants seek to assert they were involved in a contractual relationship with SeaStreak, the contract in question can only be a contract of carriage for a single trip from New Jersey to New York aboard SEASTREAK WALL STREET. Only one vessel was involved in fulfilling SeaStreak's obligations under that alleged contract: the SEASTREAK WALL STREET.

Claimants' affirmative defenses misapprehend the common enterprise requirement of the flotilla rule. It is without dispute that no other vessels owned by SeaStreak were involved in the allision. And because a passenger can only ride one ferry at a time, there can be no issue that any other of SeaStreak's ferries were necessary for the performance of any alleged contract of carriage. Thus, there was no common enterprise involving any other vessel.

In short, there was no flotilla at the time of the incident because there was no common enterprise and only one vessel was involved in the casualty giving rise to the limitation proceeding. Accordingly, the limitation fund is correctly established based upon the value of the SEASTREAK WALL STREET. Any affirmative defenses asserting otherwise are insufficient as a matter of law and should be stricken.

9

## POINT III

## A JURY TRIAL IS UNAVAILABLE AS A MATTER OF LAW BECAUSE THIS IS AN ADMIRALTY CASE PROCEEDING UNDER THE LIMITATION ACT AND THERE IS NO SUBJECT MATTER JURISDICTION BASED ON DIVERSITY

When a ship owner facing potential liability for a maritime accident files a complaint seeking protection under the Limitation Act, the District Court is authorized to stay all proceedings against the owner, and to direct all potential claimants to file their claims against the owner in the District Court within a specified period of time.  46 U.S.C. § 30511 (formerly 46 U.S.C. §185); FED. R. CIV. P. SUPPL. RULE F.  This procedure is already in place in this case. (*See* Doc. No. 3 (establishing claims filing deadline of May 16, 2013 and enjoining prosecution of claims in any other court).)

Thereafter, the filed claims are adjudicated by the District Court, sitting without a jury. *In re J.A.R. Barge Lines, L.P.*, 307 F. Supp. 2d 668, 673-674 (W.D. Pa. 2004).  The court determines whether the vessel owner is liable and whether the owner may limit liability.  The court, without a jury, then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.  *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 131-132 (3d Cir. 1997).

The matter proceeds before the Court, without a jury, because there is "no right to a jury in actions instituted in admiralty, and the claimants are enjoined from pursuing common law actions in other forums."  *Gorman v. Cerasia*, 2 F.3d 519, 523-25 (3d Cir. 1993) (*quoting In re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755 (2d Cir. 1988)).  *See also In re McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 826 (7th Cir.), cert. denied, 519 U.S. 950 (1996) ("Claimants have no right to a jury in admiralty actions, and thus lose their right to pursue common law remedies before a jury when forced into admiralty

10

court under the Limitation Act."); *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 450 (4th Cir. 1999) ("insofar as claimants proceed in a limitation-of-liability action, they are not entitled to a trial by jury"); FED. R. CIV. P. 38(e)("These rules shall not be construed to create a right to trial by jury on the issues in an admiralty or maritime claim within the meaning of Rule 9(h).")

There are two exceptions to this exclusive admiralty jurisdiction over Limitation Act proceedings, neither of which is applicable here. The first arises when the value of the vessel and its freight exceeds that of all claims, that is, the fund is adequate to cover all claims filed against the owner. The second exception arises when there is only one claimant whose claim exceeds the value of the vessel and its freight. *Gorman v. Cerasia*, 2 F.3d 519, 523-25 (3d Cir. 1993). Here, there are multiple claimants whose claims exceed the value of the SEASTREAK WALL STREET.

This case was initiated by SeaStreak and brought pursuant to the Limitation Act. Claimants have filed claims in the Limitation action. Thus, the Claimants are not entitled to have their claims adjudicated by a jury. Accordingly, the Court should strike all jury demands and proceed to a trial on this matter before the Court alone.

Further, the fact that some claimants have pled subject matter jurisdiction based on diversity of citizenship does not provide them with a basis for a jury trial. *First*, there is no subject matter jurisdiction based on diversity because SeaStreak and the claimants who have pled jurisdiction based on diversity are all citizens of New Jersey. *See* 28 U.S.C. §1332. A corporation is deemed a citizen "of any State by which it has been incorporated and of the State where it has its principal place of business." *Grand Union Supermarkets of the V.I. v. H.E. Lockhart Mgmt.*, 316 F.3d 408, 410 (3d Cir. 2003)(*quoting* 28 U.S.C. § 1332(c)). SeaStreak's Verified Complaint pleads that its principal place of business is New Jersey (Compl. at ¶2) and

11

that fact cannot be in dispute.[4]   At the same time, however, the Claim of Claimant Indris E. Mednis ("Mednis") (Doc. No. 149), for example, alleges that Mednis was a resident of New Jersey at the time of the accident.[5]   Thus, there is no subject matter jurisdiction based on diversity of citizenship.

*Second*, absent a specific statutory right to a jury, the Court is without authority to grant a jury trial in an admiralty proceeding merely because there also may be diversity of citizenship between the parties.  *In re Complaint of High Hook, Inc.*, No. 91-5138, 1992 U.S. Dist. LEXIS 8855, *8 (E.D. Pa. May 29, 1992).  *See also In Re Complaint Of Thomas Barsch, et al.,* No. 91-2170, 1994 AMC 1999 (D.N.J. Mar. 1, 1993)(court denied jury demand in limitation action with diversity of citizenship arising out of water skiing accident).

---

[4] SeaStreak's Complaint was verified by its President, James Barker, pursuant to 28 U.S.C. § 1746, and is to be treated as the equivalent to an affidavit.  *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985)(treating verified complaint as an affidavit on summary judgment motion).

[5] *See also*, for example, the claims of Robert and Candace Cade (Doc. No. 180); Sheila Carson (Doc. No. 171); Edward and Susan DePalma (Doc. No. 81); Lauren Dwyer-Mihlon and Dane Mihlon (Doc. No. 177); Adrienne Fedor-Rieger and Richard Rieger (Doc. No. 70); Anne and Peter Fitch (Doc. No. 62); Ashley Furman and Gerard Levin) (Doc. No. 122); Brian and Laura Higginson (Doc. No. 63); Michelle Jenks (Doc. No. 64); Wendy Kane (Doc. No. 72); Kelly Newsome (Doc. No. 38); Alfred and Debra Oliva (Doc. No. 184); Gere Ricker (Doc. No. 150); Matthew Sternberg (Doc. No. 120); Robert and Colette Thomson (Doc. No. 107).

12

## CONCLUSION

Based on the foregoing, the Court should enter an order (1) striking the affirmative defense of any claimant who asserts that the $7.6 million limitation fund established by SeaStreak should be increased under the flotilla rule; (2) striking the jury demand made by any claimant; and (3) for such other and further relief in favor of SeaStreak as the Court deems just and proper.

Respectfully Submitted,

**BLANK ROME LLP**

By:      /s/ *William R. Bennett*
       William R. Bennett, III, Esquire
       Alan M. Weigel, Esquire
       *(admitted pro hac vice)*
       Kevin J. Bruno, Esquire
       New Jersey Resident Partner
       301 Carnegie Center, 3rd Floor
       Princeton, NJ 08540
       (609) 750-7700 (Phone)
       (609) 897-7395 (Fax)
       KBruno@BlankRome.com (e-mail)

       -and-

       **KAUFMAN DOLOWICH & VOLUCK LLP**
       Gino A. Zonghetti, Esquire
       Court Plaza South, 21 Main Street, Suite 251
       Hackensack, New Jersey 07601
       (201) 708-8233 (Phone)
       (201) 488-6652 (Fax)
       gzonghetti@kdvlaw.com

       *Attorneys for Plaintiff, SEASTREAK, LLC*

Dated:  August 27, 2013

686545.00614/7278083v.1