# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF SEASTREAK, LLC, AS OWNER OF THE VESSEL SEASTREAK WALL STREET FOR EXONERATION FROM OR LIMITATION OF LIABILITY | IN ADMIRALTY<br><br>Case No.: 2:13-cv-00315-WJM-MF<br><br>**Returnable:** October 7, 2013<br><br>**Electronically Filed** |

---

## CLAIMANTS' MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S MOTION TO STRIKE CLAIMANTS' FLOTILLA DOCTRINE AFFIRMATIVE DEFENSE AND CLAIMANTS' JURY TRIAL DEMANDS

---

**HOBBIE, CORRIGAN & BERTUCIO, P.C.**
125 Wyckoff Road
Eatontown, New Jersey 07724
Jacqueline DeCarlo, Esq. (2676)
(732) 380-1515 (Phone)
(732) 380-1720 (Fax)
jdecarlo@hcblawyers.com (e-mail)
***Lead Counsel for Claimants***

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .............................................................1

STATEMENT OF FACTUAL AND PROCEDURAL HISTORY ........7

LEGAL ARGUMENT

POINT I

THE APPLICABILITY OF THE FLOTILLA DOCTRINE
IS UNRIPE FOR DETERMINATION, AS THE ISSUE OF
LIMITATION HAS NOT BEEN DECIDED AND THE
VALUE OF THE LIMITATION FUND HAS NOT BEEN
SHOWN TO BE INADEQUATE ................................................8

POINT II

PETITIONER'S RULE 12(F) MOTION TO STRIKE
SHOULD BE DENIED, AS SUCH MOTIONS ARE
PARTICULARLY DISFAVORED WHERE, AS HERE
DISCOVERY HAS BARELY BEGUN ......................................11

POINT III

THE FLOTILLA DOCTRINE IS A LEGALLY
SUSTAINABLE AFFIRMATIVE DEFENSE IN THIS
LITIGATION; PETITIONER'S MOTION TO STRIKE
MUST THEREFORE BE DENIED ...........................................15

A.     The Development Of The Modern Flotilla Doctrine..........16

        i.      The Limitation Act: "Relic of an Earlier Era" .........16

        ii.     The Flotilla Doctrine's Historical Development......18

B.   The Flotilla Doctrine Is A Legally Sustainable
     Affirmative defense In This Matter, Where There
     Was A Contractual Relationship Between Petitioner
     And Claimants ..................................................................20

     i.    All vessels in the SeaStreak commuter ferry
           Flotilla are engaged in a "common venture"
           Or "enterprise"..........................................................22

     ii.   All vessels in SeaStreak's flotilla are under a
           Single managerial command ....................................26

     iii.  All vessels in the flotilla are owned by SeaStreak ...28

POINT IV

PETTIONER'S MOTION TO STRIKE CLAIMANTS'
JURY DEMANDS SHOULD BE DENIED TO PRESERVE
CLAIMANTS' RIGHT TO A JURY TRIAL PURSUANT
TO THE 'SAVING TO SUITORS' CLAUSE
OF 28 U.S.C. § 1331(1) ............................................................29

CONCLUSION .......................................................................34

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page**

<u>Board of Trustees of Trucking Employees of North Jersey</u>
<u>Welfare Fund Incorporated-Pension Fund v. Gotham Fuel Corp.</u>,
860 F.Supp. 1044 (D.N.J. 1993)............................................................14

<u>Brown & Root Marine Operators, Inc. v. Zapata Off–Shore Co.</u>,
377 F.2d 724 (5th Cir.1967)...................................................................24,25

<u>Cenac Towing Co. v. Terra Resources, Inc.</u>,
734 F.2d 251 (5th Cir.1984)...................................................................21

<u>Cipollone v. Liggett Group, Inc.</u>, 789 F.2d 181 (3d Cir. 1986)..............12

<u>Complaint of Bankers Trust Co.</u>, 651 F.2d 160 (3d Cir. 1981) ..............17

<u>Complaint of Great Lakes Dredge & Dock</u>,
895 F. Supp. 604 (S.D.N.Y. 1995)........................................................30,31,32

<u>Complaint of Poling Transp. Corp.</u>,
776 F. Supp. 779 (S.D.N.Y. 1991).........................................................32

<u>Complaint of Tom Quinn Co., Inc.</u>,
806 F. Supp. 945 (M.D. Fla. 1992) ........................................................22,28

<u>Esta Later Charters, Inc. v. Ignacio</u>, 875 F.2d 234 (9th Cir.1989)..........17

<u>Foret v. Transocean Offshore (USA), Inc.</u>, No. 09–4567,
2011 WL 3818635 (E.D. La. Aug. 29, 2011).........................................21,27,28

<u>Glenside West Corp. v.  Exxon Corp.</u>,
761 F.Supp. 1100 (D.N.J. 1991)............................................................14

<u>In re American Commercial Lines</u>, 353 F.Supp. 872 (D.Ky. 1973).......4,20

<u>In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.</u>,
836 F.2d 750 (2d Cir.1988) ...................................................................16,30

In re Drill Barge No. 2, 454 F.2d 408  (5th Cir. 1972) ...........................21

In re Gabapentin Patent Litigation,
648 F.Supp.2d 641 (D.N.J. 2009)........................................................11,12,26

In re Marquette Transp. Co., LLC, 2011 WL 1486119
(E.D. La. Apr. 18, 2011)........................................................................10

In re Massman, No. 12 Civ. 1665,
2013 WL 718885 (E.D. Mo. Feb. 27, 2013) .......................................9,10

In re Moran Towing Corp., No. 10 Civ. 4844,
2012 WL 1254975 (S.D.N.Y. April 13, 2012)......................................32

In re North American Trailing Co., 763 F. Supp. 152
(E.D. Va.1991) .....................................................................................22

In re Orion Dredging Services, LLC, No. 09-358,
2009 WL 5171756 (M.D. Fla. Dec. 23, 2009)......................................23

In re Two R Drilling Co., Inc., 943 F.2d 576 (5th Cir. 1991).................33

In re U.S. Dredging Corp., 264 F.2d 339 (2d Cir. 1959) .......................17,23,24

In re War Admiral, LLC, No. 09-4327,
2011 WL 5826083 (E.D. La. Nov. 18, 2011)........................................27

In re Weeks Marine, Inc., No. 00 CV 185, 2000 WL 33389207
(M.D. Fla. Nov. 30, 2000)................................................................. 21,22,28

Lewis v. Lewis & Clark Marine, 531 U.S. 438 (2001).................... 16,31

Liverpool, Brazil & River Plate Steam Navigation Co. v.
Brooklyn Eastern Dist. Terminal, 251 U.S. 48 (1919)..........................18,19,24

Lockheed Martin Corp. v. Unknown Respondents,
2007 WL 965451 (N.D.N.Y. 2007) .....................................................17

<u>Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.</u>,
964 F.2d 1571 (5th Cir. 1992)...................................................................33

<u>Matter of Antill Pipeline Constr. Co., Inc.</u>,
1998 WL 321512 (E.D.La. June 17, 1998)...............................................27

<u>Matter of Falcon Workover Co., Inc.</u>, No. 98-0005,
1998 WL 760397 (E.D. La. Oct. 27, 1998)...............................................10

<u>Matter of Offshore Specialty Fabricators, Inc.</u>, No. 01-2227,
2002 WL 827398 (E.D. La. April 30, 2002)......................................4,22,27

<u>Norfolk Dredging Co. v. Wiley</u>,
357 F. Supp.2d 944, 951 (E.D.Va.2005).....................................................9

<u>Sacramento Navigation Co. v. Salz</u>, 273 U.S. 326 (1927).....................18,19

<u>Standard Dredging Co. v. Kristiansen</u>, 67 F.2d 548 (2d Cir. 1933) .......24,25

<u>Steuart Inv. Co. v. Bauer Dredging Const. Co.</u>,
323 F.Supp. 907 (D. Md. 1971) ................................................................25

<u>The George W. Pratt</u>, 76 F.2d 902 (2d Cir. 1935)....................................25

<u>United States v. Kramer</u>, 757 F. Supp. 397 (D.N.J. 1991).......................13

<u>United States Dredging Corp. v. Krohmer</u>,
264 F.2d 339 (2d Cir. 1959)......................................................................22

<u>University of Texas Medical Branch at Galveston v. United States</u>,
 557 F.2d 438 (5th Cir. 1977)...................................................................17

<u>U.S. v. Sensient Colors, Inc.</u>, 580 F.Supp.2d 369 (D.N.J. 2008)............12

<u>Valley Line Co. v. Ryan</u>, 771 F.2d 366 (8th Cir. 1985)............................21

<u>World Tanker Carriers Corp. v. M/V Ya Mawlaya</u>,
1996 WL 20874 (E.D. La. Jan. 18, 1996) ................................................10

**The Constitution, Statutes and Rules**

United States Constitution, Article III, § 2............................................29,30

28 U.S.C. § 1331(1)..........................................................................6,16,29,30

46 U.S.C. § 181 ...............................................................................16

46 U.S.C. § 30501, et seq. ...............................................................16

46 U.S.C. § 30505(b)........................................................................16

46 U.S.C. § 30511 ...........................................................................16

Fed. R. Civ. P. 12(b)(6) ...................................................................11

Fed. R. Civ. P. 12(f) ...........................................2,3,6,8,11,12,13,14,20,29

Fed. R. Civ. P. 38(b)........................................................................7

Fed. R. Civ. P. 39(c)........................................................................32

Supplemental Maritime Fed. R. Civ. P. F(3) ...................................16

Supplemental Maritime Fed. R. Civ. P. F(4) ...................................16

**Other Authorities Cited**

Benedict on Admiralty, 7th Ed. (Knauth) Vol. 3. § 67 (1975)................10

G. Gilmore & C. Black, Jr., The Law of Admiralty (2d Ed.1975) .........10,30

Thomas J. Schoenbaum. "Admiralty & Maritime Law"
§ 15-1 (2004) ..................................................................................18

Wright & Miller, 5A Federal Practice and Procedure: Civil 2d
(Federal Practice) § 1381 (1990)...................................................13

## PRELIMINARY STATEMENT

New Jersey residents relied upon Petitioner SeaStreak, LLC's high-speed ferries for transport from New Jersey to Manhattan and back again to New Jersey. Discovery will reveal that, to perform these voyages, SeaStreak dispatched its available fleet of 4 high-speed passenger ferries. On January 9, 2013, Claimants were fare-paying, ticket-holding New Jersey residents aboard the *SeaStreak Wall Street* (the "Ferry" or "Vessel"), one of the four high-speed passenger ferries owned and operated by Petitioner, when it violently crashed into Pier 11 in Lower Manhattan. As a result, numerous passengers suffered severe, permanent, and life-altering injuries. Within a week of this crash, Petitioner filed the present limitation action in an effort to limit its liability for the severe and permanent injuries it caused to its innocent passengers to only the value of the *SeaStreak Wall Street*, which is alleged to be approximately $7.6 million. Claimants, in their respective answers, have relied upon an affirmative defense known as the "Flotilla Doctrine," which provides that, in a situation where there is a contract between the parties (like the SeaStreak passenger ticket), when a group of vessels is (1) subject to common ownership (2) engaged in a common enterprise, and (3) under a single managerial command, the value of the entire group of vessels comprises the limitation fund, <u>regardless</u> of whether those other vessels directly contributed to the happening of the casualty.

1

Here, it is anticipated that discovery will confirm that the contract/ticket in question did not entitle a passenger to ride on a particular ferry on any given trip, nor did the contract/ticket even mention the *SeaStreak Wall Street* or any specific vessel.  Rather, the contract/ticket drafted by SeaStreak provided it with the unilateral and exclusive right to designate any of the ferries in its fleet, at any time, to provide transport to a ticket holder.  Thus, Claimants maintain that SeaStreak required, and reserved the right to use, its entire fleet of ferries to carry out the service it contractually promised to ticket-holders.  Therefore, because SeaStreak's entire fleet of ferries, which were under a single command and engaged in a joint venture, were used by SeaStreak to fulfill the contract in question, the value of the entire fleet of ferries should comprise any limitation fund pursuant to the "Flotilla Doctrine."

Now, despite the fact that no discovery has formally been exchanged, Petitioner has moved pursuant to Fed.R.Civ.P. 12(f) to strike Claimants' Flotilla Doctrine defense, claiming that said defense is "insufficient" as a matter of law. Petitioner's motion to strike this fact-sensitive affirmative defense before any discovery has occurred is not only grossly premature, but it is based upon a blatant mischaracterization of the law governing the Flotilla Doctrine.

First, as many courts have recognized, the applicability of the Flotilla Doctrine is not ripe for adjudication until after the issue of limitation is decided or

2

the limitation fund is deemed inadequate.  The Flotilla Doctrine is simply a mechanism by which Claimants may seek to increase a limitation fund.  Thus, a court should not rule on the applicability of the Flotilla Doctrine until it is established that (1) there will be a limitation fund and (2) said fund will be inadequate.  Here, it is far from a *fait accompli* that Petitioner is entitled to limitation at all.  Petitioner's motion for a ruling on the Flotilla Doctrine is therefore extremely premature and unripe for determination, as it has not been decided whether there will even be a limitation fund to increase by application of the Doctrine.  (See Point I, *infra.*)

As to the standard governing the consideration of a Rule 12(f) motion to strike, the Court should accept all factual allegations in Claimants' pleadings as true and construe Claimants' pleadings in the light most favorable to the Claimants.  The Third Circuit Court of Appeals and the Courts of this District have consistently held that motions to strike defenses under Fed.R.Civ.P. 12(f) are disfavored and that courts should be reluctant to resolve even purely legal issues on the sparse record of a motion to strike.  A trial court's discretion to strike a defense is narrowly circumscribed and should only be applied when there is no possible way a defense could succeed under any conceivable factual circumstances.  Ironically, Petitioner itself concedes in its brief that each case involving an assertion of the Flotilla Doctrine "must be decided on its own facts,"

3

see Petitioner's Brief, page 6, yet Petitioner is now asking the Court to rule on the issue in a vacuum <u>without</u> any factual record.  Petitioner's disfavored, pre-discovery motion to strike Claimants' asserted reliance on the Flotilla Doctrine should be denied pending discovery so that, if it becomes necessary to adjudicate the defense on the merits (which is not a foregone conclusion), the Court may fashion its ruling with the benefit of a full factual record.  (See Point II, *infra.*)

Petitioner's basic argument is that because the crash involved only one vessel in its fleet of commuter ferries, the Flotilla Doctrine is *per se* inapplicable as a matter of law.  Contrary to Petitioner's representation, in a case where there was a contractual relationship between a petitioner and the claimants, the concept of a "common enterprise"/"joint venture" under the Flotilla Doctrine applies to more than simply the vessel that directly caused the casualty/harm in question.  Rather, where the parties have a contractual relationship, the limitation fund should include the value of all vessels that Petitioner was using to carry out the enterprise, ***whether or not the vessels were "the active cause of the harm,"*** see <u>In re American Commercial Lines</u>, *infra*, 353 F.Supp. 872, 874 (D.Ky. 1973) (emphasis added), and ***whether or not the vessels were "actively performing work on the contract" at the time of the harm***, see <u>Matter of Offshore Specialty Fabricators, Inc.</u>, No. 01-2227, 2002 WL 827398 (E.D. La. April 30, 2002) at * 3, DeCarlo Aff., Exhibit "A" (emphasis added).  Petitioner is simply incorrect that

4

the Flotilla Doctrine cannot apply as a matter of law to a single-vessel allision; the case law holds just the opposite. Here, it is respectfully submitted that discovery will confirm that all four ferries are interchangeable under the governing contract and Petitioner used its entire flotilla to carry out the common enterprise of providing a commuter pathway between New Jersey and New York. The fact that only a single vessel was involved in the allision is not dispositive of whether the Flotilla Doctrine may apply here. As Petitioner has failed to demonstrate as a pure matter of law that there are no conceivable facts under which a "common enterprise" / "joint venture" under the Flotilla Doctrine can be found, its motion to strike should be denied.[1] (See Points III.A and B, *infra.*)

Likewise, the remaining two factors of the Flotilla Doctrine also involve issues of fact which should not be determined until Claimants are permitted to engage in discovery. Contrary to Petitioner's mischaracterization of the law with regard to the "single command" element of the Flotilla Doctrine, the case law is clear that it is not required that the vessels be operated by the same on-board captain. Rather, all that is required is that a single individual or entity possesses the right to exercise managerial control over the vessels. Thus, this element of the

---

[1] It should also be noted that Claimants have asserted, as a factual allegation in their answers, that the *SeaStreak Wallstreet* was ***part of a joint venture involving several vessels.***" See, e.g., the January 21, 2013 Answer of Claimants John and Janet Urbanowicz, Document No. 10, ¶¶ 6,7 (emphasis added). For the purposes of a motion to strike, this factual allegation must be taken as true, thereby satisfying the "joint venture" factor of the Flotilla Doctrine.

Flotilla Doctrine has been satisfied where multiple vessels were under the control of a single dispatcher, project superintendent, or other management personnel. Claimants anticipate that discovery will establish that the vessels in Petitioner's commuter ferry fleet were under such a common command.  Similarly, discovery will also decisively answer the question of whether all of the vessels in Petitioner's commuter ferry fleet were owned by Petitioner, which Claimants anticipate to be the case.  (See Point III.B.ii and iii, *infra*).  In light of the governing legal standards and the absence of discovery regarding these key factual issues, it is respectfully submitted that Petitioner has failed to establish that there is no possible factual scenario under which the Flotilla Doctrine applies here and, therefore, its motion to strike must be denied.

Finally, Petitioner's motion to strike Claimants' jury demands should be denied to preserve Claimants' rights to a jury trial as to the issue of damages pursuant to the "Saving to Suitors" clause of 28 U.S.C. § 1331(1).  Moreover, should these matters remain in Federal Court, it is respectfully submitted that this Court should employ the well-established practice of using an advisory jury to determine the amount of damages to which each claimant is entitled, as was done, for example, in the Staten Island Ferry litigation.  (See Point IV, *infra*.)

For all the foregoing reasons, as set forth in more detail below, Petitioner's Rule 12(f) motion to strike should be denied.

## FACTUAL AND PROCEDURAL HISTORY

On January 16, 2013, just seven days after Petitioner's ferry violently
crashed into a Lower Manhattan dock and thereby caused severe, permanent, and
life-altering injuries to its passengers, SeaStreak commenced the instant limitation
action.  SeaStreak alleged that the value of the *SeaStreak Wall Street* was $7.6
million, and purportedly deposited this sum with the Court.  By Order filed
January 16, 2013, the Court "restrained, stayed and enjoined" the commencement
of any other actions by injured passengers and directed that claims and answers be
filed by May 16, 2013. Docket No. 3 at p. 3.

Numerous claims and answers were thereafter filed, with each Claimant,
*inter alia*, seeking to preserve their right to a jury trial by expressly demanding a
jury in their filed papers pursuant to Fed.R.Civ.P. 38(b) and reserving their right
to challenge the limitation fund valuation.

Moreover, Claimants asserted the Flotilla Doctrine as an affirmative
defense, under which any limitation fund would be increased to include the value
of the entire fleet of ferries commonly owned by Petitioner that were employed in
the common enterprise/joint venture of providing passenger service between New
Jersey and Manhattan.  Critically, Claimants specifically pled a factual allegation
that the *SeaStreak Wall Street* was "***part of a joint venture involving several
vessels.***"  See, *e.g.,* the January 21, 2013 Answer of Claimants John and Janet

7

Urbanowicz, Document No. 10, ¶¶ 6,7 (emphasis added).  As set forth below, this factual allegation must be deemed admitted for the purposes of a Rule 12(f) motion to strike.

The last Claimant's Answer was filed on May 15, 2013.  See Document No. 184.  Over three months later, on August 27, 2013, Petitioner filed its present motion to strike Claimants' Flotilla Doctrine affirmative defense and jury demands pursuant to Fed.R.Civ.P. 12(f).[2]

## LEGAL ARGUMENT

## POINT I

**THE APPLICABLITY OF THE FLOTILLA DOCTRINE IS UNRIPE FOR DETERMINATION, AS THE ISSUE OF LIMITATION HAS NOT BEEN DECIDED AND THE VALUE OF THE LIMITATION FUND HAS NOT BEEN SHOWN TO BE INADEQUATE.**

Numerous courts have held that the applicability of the Flotilla Doctrine should not be ruled upon until such time as it becomes necessary to do so and when the parties have conducted sufficient discovery to flesh out the relevant factual record.  The Flotilla Doctrine is a mechanism by which a Claimant may seek to increase the limitation fund in the event it appears the fund will be inadequate.  Therefore, the Flotilla Doctrine may become moot in the event the

---

[2] Significantly, Rule 12(f) requires that a motion to strike be filed within 21 days of service of the pleading it addresses.  Thus, Petitioner's present motion to strike is untimely (in addition to being substantively without merit, as set forth in the Legal Argument herein).

court declines to grant the petition for limitation (in which case there would be no limitation fund to increase) or in the event any eventual limitation fund proves to be sufficient.  Thus, Petitioner's motion to strike the Flotilla Doctrine as a defense should be denied as premature.

For example, in In re Massman, No. 12 Civ. 1665, 2013 WL 718885 (E.D. Mo. Feb. 27, 2013), DeCarlo Aff., Exhibit "B", the court stated:

> Claimants have filed a Motion to Increase Limitation Fund (Doc. No. 26), in which they argue that the limitation fund should be increased, pursuant to the "flotilla doctrine," to reflect the combined value of all vessels taking part in the operation that Claimants link to the decedent's passing. ***Because this issue may be rendered moot*** if Claimants' judgment in their chosen forum does not exceed the limitation fund as it now stands, ***the Court believes the issue should be set aside until such time as it becomes relevant.***
>
> In addition, the Court is concerned that, were it to entertain Claimants' motion at present, ***the absence of evidence developed thus far in the proceeding may result in an erroneous resolution of the matter.***
>
> Therefore, the court denies Claimants' motion to increase the limitation fund, but will permit Claimants to renew it in the limitation action, if necessary.

In re Massman, supra, at * 10 (citations omitted) (emphasis added), DeCarlo Aff., Exhibit "B."  See also Norfolk Dredging Co. v. Wiley, 357 F. Supp.2d 944, 951 (E.D.Va.2005), aff'd, 439 F.3d 205 (4th Cir.2006) (cited in In re Massman, supra) (court denied claimant's motion to increase the limitation fund pursuant to the flotilla rule "until such time as it becomes relevant" and permitted claimant to

9

"renew it in the limitation action, if necessary"); World Tanker Carriers Corp. v. M/V Ya Mawlaya, 1996 WL 20874, at *3 (E.D. La. Jan. 18, 1996), DeCarlo Aff., Exhibit "C", *rev'd on other grounds*, 99 F.3d 717 (5th Cir.1996), (*citing* Benedict on Admiralty, V.3, § 67 (1975); G. Gilmore & C. Black, Jr., The Law of Admiralty, § 10–34 (2d Ed.1975) (*quoted* in In re Massman, *supra*)) ("**the better procedure as to [an] increase in the limitation fund is to wait on the conclusion of the limitation action, and to increase the security if the owner is found entitled to limitation and the limitation fund is inadequate**") (emphasis added);In re Marquette Transp. Co., LLC, 2011 WL 1486119, at *3 (E.D. La. Apr. 18, 2011), DeCarlo Aff., Exhibit "D" (*cited* in In re Massman, *supra*) (motion to increase limitation fund denied as "premature" where, *inter alia*, no proof that limitation fund would be insufficient to satisfy claims made); Matter of Falcon Workover Co., Inc., No. 98-0005, 1998 WL 760397 at * 1 (E.D. La. Oct. 27, 1998), DeCarlo Aff., Exhibit "E" (claimant's motion to increase the limitation fund "from a legal standpoint, is well-supported and can be re-urged following appropriate discovery").

An identical situation exists here. There has been no discovery, Petitioner's right to limitation has not been decided, and the current limitation fund has not been determined inadequate. Accordingly, it is respectfully submitted that the

Court should defer ruling on the instant motion until such time as may be necessary.

## POINT II

### PETITIONER'S RULE 12(F) MOTION TO STRIKE SHOULD BE DENIED, AS SUCH MOTIONS ARE PARTICULARLY DISFAVORED WHERE, AS HERE, DISCOVERY HAS BARELY BEGUN.

Despite the fact that essentially no discovery has been exchanged between the parties as of the date of this brief, Petitioner SeaStreak has moved pursuant to Rule 12(f) to strike Claimants' assertion of the Flotilla Doctrine as an affirmative defense. It is respectfully submitted that the Court should reject Petitioner's improvident invitation to decide a highly fact-sensitive issue such as the applicability of the Flotilla Doctrine in the absence of an adequate factual record. Instead, Petitioner's motion should be denied in accordance with the consistent case law of the Third Circuit Court of Appeals and the District of New Jersey, which cautions trial courts to avoid granting Rule 12(f) motions when the parties are still in the middle of discovery or where, as here, discovery has hardly begun.

Fed.R.Civ.P. 12(f) provides that a party may move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike "challenges the legal sufficiency of the pleading" and is subject to the same general standard of review as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). In re Gabapentin Patent Litigation, 648 F.Supp.2d 641, 647

11

(D.N.J. 2009).  Matter outside the pleadings should not be considered on a Rule 12(f) motion.  U.S. v. Sensient Colors, Inc., 580 F.Supp.2d 369, 374 (D.N.J. 2008).

"An affirmative defense is insufficient as a matter of law if it cannot succeed *under any circumstances*."  In re Gabapentin Patent Litigation, *supra*, 648 F. Supp.2d at 647-648 (emphasis added).  In determining whether a defense is insufficient, "the Court must accept all factual allegations in the Answers as true, construe the Answers in the light most favorable to [the answering parties], and determine whether, under any reasonable reading of the pleadings, [the answering party] may be entitled to relief."  *Id*. at 648.

The Third Circuit Court of Appeals has held that "a court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent."  Cipollone v. Liggett Group, Inc., 789 F.2d 181, 188 (3d Cir. 1986) (internal citation and quotation marks omitted).  "The underpinning of this principle rests on a concern that a court should restrain from evaluating the merits of a defense where, as here, the factual background for a case is largely undeveloped."  *Id*.

Case law in the District of New Jersey has emphasized that trial courts should be extremely reluctant to grant a motion to strike a defense and that such motions should almost always be denied pending the exchange of discovery.  The late Honorable John F. Gerry, Chief Judge of this Court, described the skeptical

12

approach a trial court should have toward a Rule 12(f) motion to strike a defense as follows:

> In general, motions to strike are *disfavored*:
>
>> Motions to strike a defense as insufficient are not favored by the courts because of their dilatory character. ***Thus, even when technically appropriate and well-founded, they often are not granted in the absence of a showing of prejudice to the moving party.*** [....] ***[E]ven when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits.***
>>
>> ***Nor will a Rule 12(f) motion be granted if there is a substantial question of fact or a mixed question of law and fact that cannot be resolved, even if it is possible to determine the issue by drawing inferences from facts and statements that are not disputed.... In sum, a motion to strike will not be granted if the insufficiency of the defense is not* clearly apparent, *or if it raises factual issues that should be determined on a hearing on the merits.***
>>
>> [5A Wright & Miller, Federal Practice and Procedure: Civil 2d (Federal Practice)] § 1381, pp. 672–678 (1990).
>
> [....] *[T]he court's discretion is* narrowly circumscribed *on a motion to strike affirmative defenses. We may strike only those defenses so legally insufficient that it is* beyond cavil *that defendants could not prevail upon them. [....] Here, there has been* little or no opportunity for discovery *and hence to develop the factual background. It would thus appear premature to strike defenses that have* any possible merit, based on the facts alleged in the many answers made by defendants.

United States v. Kramer, 757 F. Supp. 397, 409-10 (D.N.J. 1991) (emphasis added).

Likewise, in Board of Trustees of Trucking Employees of North Jersey Welfare Fund Incorporated-Pension Fund v. Gotham Fuel Corp., 860 F.Supp. 1044, 1054 (D.N.J. 1993), the late Honorable Harold A. Ackerman, U.S.D.J., denied a motion to strike where the parties were "in the middle of discovery" and where the "factual background remain[ed] undeveloped."

In Glenside West Corp. v. Exxon Corp., 761 F.Supp. 1100, 1115 (D.N.J. 1991), a case cited by Petitioner at page 5 of its brief, the Court held that "*Even where the facts are not in dispute, Rule 12(f) is not meant to afford an opportunity to determine disputed and substantial questions of law*" (emphasis added).

In light of the above, strongly-expressed presumption against the granting of Rule 12(f) motions to strike defenses, it is respectfully submitted that Petitioner's motion to strike Claimants' asserted Flotilla Doctrine defense should be denied, as the applicability of this Doctrine presents a "disputed and substantial question of law." Ironically, Petitioner itself concedes in its brief that each case involving an assertion of the Flotilla Doctrine "must be decided on its own facts," see Petitioner's Brief, page 6, yet Petitioner is now asking the Court to rule on the issue in a vacuum without any factual record. The striking of a colorable defense based upon an essentially vacant factual record is a disfavored proposition in this Circuit. Most importantly, as set forth in more detail below, Petitioner has failed to

14

establish that there exist no factual circumstances under which the Flotilla Doctrine could apply in this matter.  Consequently, Petitioner's motion to strike should be denied.

**POINT III**

**THE FLOTILLA DOCTRINE IS A LEGALLY SUSTAINABLE AFFIRMATIVE DEFENSE IN THIS LITIGATION; PETITIONER'S MOTION TO STRIKE MUST THEREFORE BE DENIED.**

Contrary to Petitioner's pedantic discussion, the modern test for application of the Flotilla Doctrine supports increasing the limitation fund to include the value of all vessels Petitioner uses in its New Jersey to Manhattan and Manhattan to New Jersey ferry service.  Based on the pleadings alone, and taking the allegations in Claimants' Answers as true and viewing them in the light most favorable to Claimants, Petitioner has failed to establish as a matter of law that there is no conceivable factual scenario under which the Flotilla Doctrine could be found to apply in this matter, where Petitioner employed a fleet of vessels that it used interchangeably to carry out a common enterprise: the transporting of commuters between New Jersey and New York.  Petitioner's motion to strike should therefore be denied.

15

A.  **The Development Of The Modern Flotilla Doctrine**

i.       **The Limitation Act: "Relic of an Earlier Era"**

The Limitation of Vessel Owner's Liability Act, 46 U.S.C. § § 30501 <u>et</u> <u>seq</u>. (formerly codified at 46 U.S.C. § 181 <u>et</u> <u>seq</u>.) (the "Limitation Act") limits the owner of a vessel's liability for, among other things, "any loss, damage, or injury by collision . . . done, occasioned, or incurred without the privity or knowledge of the owner," to "the value of the vessel and pending freight."  46 U.S.C. § 30505(b).

After the vessel owner deposits with the court an amount representing the value of the vessel and its freight (the "limitation fund"), the district court stays all related claims against the vessel owner pending in any other forum, and directs all potential claimants to file their claims against the vessel owner in the district court within a specified period of time.  46 U.S.C. § 30511; Supplemental Rules for Certain Admiralty and Maritime Claims Rules F(3), F(4); *see also* <u>In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.</u>, 836 F.2d 750, 755 (2d Cir.1988).[3]

Congress passed the Limitation Act in 1851 "to encourage ship-building and to induce capitalists to invest money in this branch of industry."  <u>Lewis v. Lewis &</u>

---

[3] In certain circumstances, claimants may proceed in state court prior to resolution of the limitation action. *See* <u>Lewis v. Lewis & Clark Marine</u>, 531 U.S. 438 (2001). In addition, if Petitioner's right to limitation is denied, claimants may seek to institute actions in an appropriate state court before a jury pursuant to the "saving to suitors" clause of 28 U.S.C. § 1333(1).

16

Clark Marine, 531 U.S. 438, 446-47 (2001) (citations omitted).  The Limitation

Act also had the purpose of "putting American shipping upon an equality with that

of other maritime nations" that had their own limitation acts.  *Id.* at 447 (quotation

and citations omitted).

   The Limitation Act has been criticized as "a relic of an earlier era"; an act of

legislation "arthritic with age"(Esta Later Charters, Inc. v. Ignacio, 875 F.2d 234,

239 (9th Cir.1989)); and "hopelessly anachronistic" (University of Texas Medical

Branch at Galveston v. United States, 557 F.2d 438, 441 (5th Cir. 1977), *cert.*

*denied*, 439 U.S. 820 (1978)).  The Third Circuit has noted that "(s)ince

approximately 1930 the early enthusiasm, both legislative and judicial, for the

limitation principle has cooled."  Complaint of Bankers Trust Co., 651 F.2d 160,

167 (3d Cir. 1981) (citation and quotation omitted).  One court has noted that it is

"at least doubtful whether the motives that originally lay behind the limitation are

not now obsolete; and certainly we should now have no warrant for extending its

scope, when the liability is for personal injury arising from the shipowner's fault."

In re U.S. Dredging Corp., 264 F.2d 339, 341 (2d Cir.), *cert. denied*, 360 U.S. 932

(1959); Lockheed Martin Corp. v. Unknown Respondents, 2007 WL 965451

(N.D.N.Y. 2007) at *4, DeCarlo Aff., Exhibit "F" ("despite suggestions that the

Act was obsolete, Congress amended it on October 6, 2006, leaving it relatively

intact").  A leading commentator has expressed the view that the original purposes

17

behind the Limitation Act seem "to have lost much of [their] force with the availability of insurance, bills of lading statutes that put substantive limits on liability for cargo loss, and the ability to limit claims by contract." Thomas J. Schoenbaum, "Admiralty & Maritime Law" § 15-1 at 137 (2004).

### ii.     The Flotilla Doctrine's Historical Development

The term "vessel" is not defined in either the Limitation Act or in Supplemental Admiralty Rule F(1). To clarify the term, the courts developed the Flotilla Doctrine, first discussed in <u>Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn Eastern Dist. Terminal</u>, 251 U.S. 48 (1919). The <u>Liverpool</u> case involved what has become known as the "pure tort" application of the Flotilla Doctrine. <u>Liverpool</u> involved a collision between a carfloat lashed to the portside of a tug and a moored steamship. Because there was no preexisting relationship between the proposed flotilla (the tug and the carfloat) and the steamship, the Supreme Court determined that the value of only the vessel actively at fault- the tug- need constitute the limitation fund. Thus, in a "pure tort" situation, where there is no pre-existing relationship between the injured party and the petitioners seeking limitation, the value of only the actively negligent vessel must be surrendered.

The harsh result of <u>Liverpool</u> was substantially remedied in <u>Sacramento Navigation Co. v. Salz</u>, 273 U.S. 326 (1927), which held that a contractual

relationship between the flotilla and the injured party requires the surrender of the entire flotilla's value into the limitation fund.  In <u>Salz</u>, a barge under tow collided with a British ship (a steamer) at anchor.  The barge was swamped, causing cargo loss. In holding that the value of both the steamer and the barge be included in the fund, the Supreme Court distinguished <u>Liverpool</u> as follows:

> There [in Liverpool] the libel was for an injury to a ship in no way related to the flotilla. It was a pure tort – no contractual obligations were involved; and the simple inquiry was, what constitutes the "offending vessel?" ***Here we must ask, what constituted the vessel by which the contract of transportation was to be effected?*** A very different question. If the British ship which here was struck by the barge were suing to recover damages and a limitation of liability were sought by the owner of the tug and barge, the Liverpool case would be on point. But the present libel is for a loss of cargo and, therefore, ***a surrender [is] required of the*** <u>***combined***</u> <u>***means***</u> ***by which the company undertook the transportation of the cargo.***

<u>Salz</u>, 273 U.S. at 332 (emphasis added).

Following the decisions in <u>Liverpool</u> and <u>Salz</u>, courts interpreting the flotilla doctrine have generally focused on whether the casualty involved a "pure tort" situation as in <u>Liverpool</u>, or a "consensual" contractual relationship as in <u>Salz</u>.  In the case at bar, there can be no doubt that because the passenger contract (as embodied in the tickets) governed the carriage of claimants as passengers, a consensual contractual relationship existed and the value of all of SeaStreak's New York/New Jersey-based flotilla engaged in the joint venture of providing this commuter passageway should be included in the limitation fund.  *See, e.g.*, In re

19

American Commercial Lines, 353 F. Supp. 872, 874 (D. Ky. 1973) ("*It may be clear that many of the vessels required to be surrendered were not the active cause of the harm*, but the courts have been of the opinion that in a consensual relationship a party to a contract should not be permitted to limit his liability to less than the value of all of the vessels he needed to complete his promise. Each of the vessels of a flotilla becomes a part of the contract . . . .") (emphasis added).

**B.**   **The Flotilla Doctrine Is A Legally Sustainable Affirmative Defense In This Matter, Where There Was A Contractual Relationship Between Petitioner And Claimants.**

In light of the applicable case law and the standard of review for a Rule 12(f) motion to strike, it is respectfully submitted that Petitioner has failed to meet its burden of establishing that the Flotilla Doctrine is inapplicable in this case as a matter of law. Petitioner claims that the Flotilla Doctrine is *per se* inapplicable here because "only one vessel was involved in the casualty," see Petitioner's Brief, page 10. However, courts have consistently held that, in a scenario where the parties have a contractual relationship, the Flotilla Doctrine applies to include all vessels engaged in the common venture, not merely the vessel that "actively" caused the loss. The legal premise upon which Petitioner's argument rests is therefore inaccurate. Moreover, Petitioner has failed to establish that there is no conceivable set of facts under which the Flotilla Doctrine could apply in this matter. Therefore, Petitioner's motion to strike should be denied.

Critically, in the instant matter, discovery will confirm that a consensual and direct contractual relationship existed between Claimants and SeaStreak, governed by the passenger ticket, which was drafted by SeaStreak itself and termed a contract. This contractual relationship envisioned the daily movement of passengers to and from Highlands/Atlantic Highlands and Manhattan using SeaStreak vessels interchangeably. In such a contractual relationship, three elements are generally required for the flotilla doctrine to apply, all of which are satisfied here:

> [U]nder the flotilla doctrine, the value of all the vessels involved in the completion or performance of a contract must be surrendered to a limitation fund when those vessels are: [1] subject to common ownership; [2] engaged in a single enterprise; and [3] under a single command.

Valley Line Co. v. Ryan, 771 F.2d 366, 376 (8th Cir. 1985) (bracketed numbers added); *see also* Cenac Towing Co. v. Terra Resources, Inc., 734 F.2d 251, 254 & n. 4 (5th Cir.1984); In re Drill Barge No. 2, 454 F.2d 408, 410–12 (5th Cir.), *cert. denied sub nom.* Cross Contracting Co., Inc. v. Law, 406 U.S. 906 (1972); Foret v. Transocean Offshore (USA), Inc., No. 09–4567, 2011 WL 3818635 at * 4 (E.D. La. Aug. 29, 2011), DeCarlo Aff., Exhibit "G"; In re Weeks Marine, Inc., No. 00

21

CV 185, 2000 WL 33389207 at *3 (M.D. Fla. Nov. 30, 2000), DeCarlo Aff.,

Exhibit "H".[4]

> ### i. All vessels in the SeaStreak commuter ferry flotilla are engaged in a "common venture" or "enterprise".

It is anticipated that discovery in this matter will confirm that the "*SeaStreak*

*Wall Street*," "*SeaStreak New York*," "*SeaStreak New Jersey*" and "*SeaStreak*

*Highlands*" were all interchangeably used to transport passengers to and from New

Jersey and Manhattan. As such, the value of all of these vessels should be included

within any limitation fund pursuant to the Flotilla Doctrine, as all of these vessels

are engaged in a single common venture.

Initially, contrary to SeaStreak's argument, "**the mere fact that the [other]**

**vessels were not actively performing work on the contract does <u>not</u> necessarily**

**lead to the conclusion that they were not contractually engaged in a common**

**enterprise for the purposes of including their value in the limitation fund.**"

Matter of Offshore Specialty Fabricators, Inc., No. 01-2227, 2002 WL 827398

---

[4] Some courts have delineated another test in determining the applicability of the flotilla doctrine– whether a particular vessel is part of "common venture" such that it is "necessary to the performance of the contract" which Claimants submit is subsumed within the tripartite test discussed above and does not warrant separate discussion. *See, e.g.,* In re Weeks Marine, Inc., No. 00 CV 185, 2000 WL 33389207 at * 3 (M.D. Fla. Nov. 30, 2000), Exhibit "H"; Complaint of Tom Quinn Co., Inc., 806 F. Supp. 945, 948 (M.D. Fla. 1992)(*citing* In re North American Trailing Co., 763 F. Supp. 152, 163 (E.D. Va.1991); United States Dredging Corp. v. Krohmer, 264 F.2d 339, 341 (2d Cir), *cert. denied*, 360 U.S. 932 (1959)).

(E.D. La. April 30, 2002) at * 3, DeCarlo Aff., Exhibit "I" (emphasis added); see also In re Orion Dredging Services, LLC, No. 09-358, 2009 WL 5171756 at *2 (M.D. Fla. Dec. 23, 2009), DeCarlo Aff., Exhibit "J" ("**actual contribution by other vessels to the casualty, while potentially of significance, is <u>not</u> under the circumstances a necessary element**").  Here, should discovery reveal that SeaStreak required and contractually reserved the right to use its entire flotilla to perform SeaStreak's mission of transporting New Jersey residents to Manhattan and back again to New Jersey, SeaStreak's entire flotilla was engaged in a common venture.

In re U.S. Dredging Corp., 264 F.2d 339, 341 (2d Cir.1959), *cert. denied*, 360 U.S. 932 (1959) is the seminal case on this issue. In U.S. Dredging, the dredge "Magic City" was engaged to dredge portions of Huntington Harbor and Bay. To allow the "Magic City" to perform its mission, other supply vessels transported shore-based workers (along with tools, fuel and barges) to and from the "Magic City."  The claimants in U.S. Dredging were injured by a flash fire on board the "Nip," one of the supply vessels used to service the "Magic City."  No other supply vessels were involved with (or even connected to) the "Nip" when the fire occurred.  The Second Circuit affirmed the lower court's order dismissing the petitioner's limitation action unless it surrendered the value of five additional vessels which serviced the "Magic City" in addition to the value of the "Nip":

23

> Not only was the 'Magic City' without power of propulsion, but the men who worked upon her had to be taken back and forth at night by the launches; her oil and other supplies to be brought to her by still other craft. **In short, all these attending 'vessels' were necessary to the performance of their owner's contract with the town.**

In re U.S. Dredging, *supra*, 264 F.2d at 340 (emphasis added).

Similarly, in Brown & Root Marine Operators, Inc. v. Zapata Off–Shore Co., 377 F.2d 724 (5th Cir.1967), Brown & Root contracted with Zapata for the construction of an off-shore gas well. To perform the contract, Brown & Root used several of its vessels, including a barge for carrying construction materials, a derrick barge which served as the headquarters for the operation, and a tug which moved the two barges, personnel and materials from place to place as needed. Damage occurred when the barge and its anchors allided with the gas well due to a squall. Brown & Root argued that only the value of the barge should be included in the limitation fund. The court disagreed:

> Where the injury is to a third person, to whom the shipowner owes no duty based upon consent, he may limit his liability to the ship against which a maritime lien would arise from the wrong. Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn Eastern Dist. Terminal, 251 U.S. 48 ... (1919) ... **However, "... to limit liability for breaches of duties incidental to a contract, all vessels which take part in the undertaking must be surrendered". The fact that the vessels are not physically bound together is irrelevant; the test is "... devotion to a single venture ..."** [ Standard Dredging Co. v. Kristiansen,] 67 F.2d at 550 (emphasis added).

See also Standard Dredging Co. v. Kristiansen, *supra*, 67 F.2d 548 (2d Cir. 1933) (in which the Hon. Learned Hand, U.S.C.J. held that "when the duty involves 'contractual obligations,' the whole flotilla embarked in the enterprise is the 'vessel'".)

U.S. Dredging and Brown & Root control here and compel the conclusion that all vessels in SeaStreak's New Jersey/New York-based flotilla were "necessary to the performance" of SeaStreak's contract with Claimants. Here, SeaStreak's fleet of four vessels transported Claimants to and from Manhattan, akin to the "Magic City" in U.S. Dredging and the offshore gas well in Brown & Root. Although the other three ferries were not involved in the crash itself, SeaStreak would be unable to accomplish its mission without the use of its four vessel fleet, which were all engaged in this common venture.

The cases relied upon by Petitioner in its Brief are distinguishable. For example, the case of Steuart Inv. Co. v. Bauer Dredging Const. Co., 323 F.Supp. 907, 912 (D. Md. 1971) was decided as a "pure tort" case, unlike the instant matter, in which the parties are related by contract. Moreover, the motion to strike in the Steuart case was denied. Likewise, the The George W. Pratt, 76 F.2d 902, 904 (2d Cir. 1935) involved a tortuous fault. In contrast, in the present matter, the more expansive legal standards governing the application of the Flotilla Doctrine to contractual situations are the relevant analysis.

25

It should also be noted that Claimants have asserted, as a factual allegation in their answers, that the *SeaStreak Wall Street* was "***part of a joint venture involving several vessels.***" See, *e.g.,* the January 21, 2013 Answer of Claimants John and Janet Urbanowicz, Document No. 10, ¶¶ 6,7 (emphasis added). For the purposes of a motion to strike, this factual allegation must be taken as true and viewed in the light most favorable to Claimants. *See* In re Gabapentin Patent Litigation, supra, 648 F. Supp.2d at 647-648. Thus, on the face of Claimants' pleadings, this element of the Flotilla Doctrine is satisfied and Claimants have adequately pled a colorable affirmative defense based on this doctrine. As Petitioner has failed to establish that there are no factual circumstances under which its fleet of interchangeable commuter ferries could be viewed as engaging in a "common enterprise," its motion to strike should be denied.

### ii.    All vessels in SeaStreak's flotilla are under a single managerial command.

Contrary to SeaStreak's argument, there is absolutely <u>no</u> requirement whatsoever that all vessels in the flotilla be under the command of a single on-board captain. Rather, as repeatedly has been held, all that is required is an individual or common management provides operational "control" of the flotilla. Thus, for example, a single on-shore dispatcher has been deemed sufficient to constitute the requisite 'single command' to allow invocation of the flotilla doctrine. Although discovery on this issue has yet to occur, it appears self-evident

26

that the "SeaStreak Wall Street," "SeaStreak New York," "SeaStreak New Jersey,"

and "SeaStreak Highlands" shared a common dispatcher and/or managerial

control.

The court in <u>In re War Admiral, LLC</u>, No. 09-4327, 2011 WL 5826083

(E.D. La. Nov. 18, 2011) at *5-*6, DeCarlo Aff., Exhibit "K," summarized the

modern state of the law on the "single command" issue:

> The requirement of a single command is nautical; it requires a person or captain with the right to control the vessels at issue. <u>In Matter of Greenhill Petroleum Corp.</u>, 1997 WL 567956, at *2 (E.D. La. Sept.10, 1997). **However, that person need not be someone providing on-board direction.** In <u>Matter of Offshore Specialty Fabricators, Inc.</u>, 2002 WL 827398, at *4. [....]
>
> **The Court finds that these three vessels were under the common control of Turn Services's [on-shore] dispatcher, whoever that unnamed individual was.** The dispatcher directed the WAR ADMIRAL—as lead fleet boat—which then passed on information to the BLACKBEARD and the OMAHA. **It is permissible to "go over the head of the captain on an individual boat" to find the person or entity with single command.**
>
> **Moreover, although the case law is unclear as to the full range of persons who may exercise single command, the Court believes that a dispatcher meets the requirement. "If two vessels share the same management personnel," this is sufficient, "even if the captains of each vessel are not the same person."** <u>Foret v. Transocean Offshore (USA), Inc.</u>, 2011 WL 3818635, at *8 (E.D. La. Aug.29, 2011). **A dispatcher communicating information regarding a particular tow-building job necessarily exercises oversight such that he qualifies as shared vessel-management personnel.** *Cf.* <u>Matter of Antill Pipeline Constr. Co., Inc.</u>, 1998 WL 321512, at *2

(E.D.La. June 17, 1998) (**supervisor with command of the activities of the vessels at the time of alleged accident**); In re Weeks Marine, Inc., 2000 WL 33389207, at *1, 4 (M.D.Fla. Nov.6, 2000), adopted by 2000 WL 33640134 (M.D.Fla. Nov.28, 2000); (**report and recommendation in case involving superintendent of beach renourishment project with supervision over captains of vessels**); Complaint of Tom Quinn Co., Inc., 806 F.Supp. 945, 946, 949 (M.D.Fla. Nov.17, 1992) (**project supervisor exercised single command of tug and barge involved in bridge repair project**). The Court finds that the WAR ADMIRAL, the BLACKBEARD, and the OMAHA were under Turn Services's single command.

In Foret v. Transocean Offshore (USA), Inc., No. 09-4567, 2011 WL 3818635 (E.D.La. August 29, 2011), cited in War Admiral, *supra*, the court noted that

> [w]ith respect to the "single command" requirement, courts within the Fifth Circuit have observed that **"command" is not limited to on-board direction. Rather, a court may go over the head of the captain of an individual boat in order to establish single command among common management personnel.**

Foret, *supra*, 2011 WL 3818635 at *8 (quotation and citations omitted), DeCarlo Aff., Exhibit "G." Here, Claimants posit that discovery will reveal that SeaStreak's New York-based flotilla was under the single command of a common managerial structure.

iii. **All vessels in the flotilla are owned by SeaStreak:**

Although confirmation as to this issue must await discovery, there appears to be no doubt ( and Petitioner has not seriously denied) that the *SeaStreak Wall*

28

*Street, SeaStreak New York, SeaStreak New Jersey,* and *SeaStreak Highlands* are all owned by Petitioner SeaStreak.

Accordingly, Claimants respectfully submit that discovery will establish that all of the elements required for invocation of the Flotilla Doctrine have been met. In any event, Petitioner's pre-discovery motion to strike Claimants' Flotilla Doctrine affirmative defense on the pleadings pursuant to Rule 12(f) should be denied, as Petitioner has woefully failed to establish that there is no conceivable set of facts under which the Doctrine could be found to apply.

## POINT IV

**PETITIONER'S MOTION TO STRIKE CLAIMANTS' JURY DEMANDS SHOULD BE DENIED TO PRESERVE CLAIMANTS' RIGHT TO A JURY TRIAL PURSUANT TO THE "SAVING TO SUITORS" CLAUSE OF 28 U.S.C § 1331(1).**

Article III, § 2, of the United States Constitution vests federal courts with jurisdiction "to all cases of admiralty and maritime jurisdiction."  However, the Constitutional grant of admiralty and maritime jurisdiction provided by Article III is tempered by the "saving to suitors" clause contained in 28 U.S.C. § 1333(1), which states:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of (1) Any civil case of admiralty or maritime jurisdiction, **saving to suitors in all cases all other remedies to which they are otherwise entitled."**

29

28 U.S.C. § 1331 (1) (emphasis added). The "saving to suitors" clause has been

interpreted as preserving an injured claimant's right to proceed in state court before

a jury. As explained in a leading admiralty treatise, the "saving to suitors" clause

means that:

> Where the suit is in personam, it may be brought either in
> federal court under the admiralty jurisdiction ... or, under the
> saving clause, in an appropriate nonmaritime court, by ordinary
> civil action.... The privilege of prosecuting maritime causes of
> action in nonadmiralty courts, conferred by the "saving to
> suitors" clause, has always been of particular importance in
> personal injury and death actions in which the plaintiffs prefer
> to have the damages assessed by a jury.

Grant Gilmore & Charles L. Black, Jr., "The Law of Admiralty" §§ 1–13, 6–62 (2d

ed. 1975). *See also* Complaint of Great Lakes Dredge & Dock, 895 F. Supp. 604

(S.D.N.Y. 1995); In re Dammers and Vanderheide, 836 F.2d 750 (2d Cir. 1987).

Thus, had SeaStreak not "beaten Claimants to the punch" by filing the

within action 7 days after the casualty, Claimants would have been free to file

actions in state courts of their choosing with a right to trial by jury. It is clear that

SeaStreak took advantage of the limitation of liability act by filing first, thus

preventing Claimants from filing in state court, and seeking to prevent Claimants

from proving their damages before a jury.

As recognized by the United States Supreme Court, "[s]ome tension exists

between the Saving To Suitors Clause and the Limitation Act. One statute gives

suitors the right to a choice of remedies, and the other statute gives vessel owners

the right to seek limitation of liability in federal court." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 448 (2001).

To preserve injured parties their statutory right to a jury trial, some courts have allowed a federal court to determine the limitation of liability issue via a bench trial, while allowing injured claimants the right to have their damages claims determined by a jury. In Complaint of Great Lakes Dredge & Dock, 895 F. Supp. 604 (S.D.N.Y. 1995), the Southern District of New York stated the principle as follows:

> While it is undeniable that, under Rule 38(e), parties have no right to a jury trial on matters within the admiralty jurisdiction of the court, it is equally undeniable that parties have no right to a non-jury trial on all of the issues in an admiralty case if considerations require otherwise.

In allowing an injured pleasure boat's passengers damages claims to proceed before a jury, with the Court determining the limitation of liability issues, the court in Great Lakes Dredge & Dock reasoned as follows:

> [W]e see no reason to grant claimants' request for a jury trial of the limitation issues. The tradition of non-jury trials in admiralty and the saving to suitors clause exist in an uneasy balance; granting claimants' request would tip the scales too far in favor of the use of jury trials in admiralty proceedings. Just as [vessel owners] Great Lakes and Lone Star may not force claimants to forego placing their claims before a jury by bringing a limitation action, claimants may not invoke the saving to suitors clause to force the vessel owners to place their limitation claims before a jury. Accordingly, at trial, we will determine, without the help of the jury, the issues relating to limitation or exoneration. Therefore, we will decide whether

31

there was negligence and, if so, whether it occurred within the privity or knowledge of either or both plaintiffs. Our decision on those issues will be given the appropriate preclusive effect. **We will then submit the remaining issues to the jury, including the issue of damages. . . . Nevertheless, juries are particularly suited to resolving questions of damages . . . .**

Complaint of Great Lakes Dredge & Dock, *supra*, 895 F. Supp. at 612 (*citing*

Complaint of Poling Transp. Corp., 776 F. Supp. 779 (S.D.N.Y. 1991)).  *See also*

In re Moran Towing Corp., No. 10 Civ. 4844, 2012 WL 1254975 (S.D.N.Y. April

13, 2012), DeCarlo Aff., Exhibit "L" (seaman's damages claim tried before a jury,

with court to determine limitation of liability issues in a non-jury proceeding).

Moreover, Federal Courts sitting in Admiralty frequently adopt the practice

of using an advisory jury to determine the issue of damages in a limitation action.

See Fed.R.Civ.P. 39(c).  For example, in the Staten Island Ferry Crash litigation,

after the Court rendered a decision without a jury as to the issue of limitation, the

Honorable Jack B. Weinstein (S.U.S.D.J.) presided over a damages trial using an

advisory jury and ultimately accepted most of the jury's findings.  See Judge

Weinstein's September 18, 2008 Order, Judgment, Findings of Fact and

Conclusions of Law in the matter of James McMillan v. The City of New York,

03-cv-6049, Document No. 943, DeCarlo Aff., Exhibit "M."

Claimants urge the Court to adopt the logical and well-reasoned opinions

discussed above.  In doing so, the Court will preserve the Claimants rights to a jury

trial, while expressly reserving for the Court the right to determine limitation of liability issues.

Finally, it should also be noted that while the issue of a shipowner's limitation of liability is exclusively for the admiralty court to decide, *"it is well recognized that a claimant may pursue the claim before a jury in state court for resolution of those issues beyond the exclusive jurisdiction of the admiralty court*. Where the claimant concedes the admiralty court's exclusive jurisdiction to determine all issues relating to the limitation of liability, the district court should lift any stay against the state proceeding." In re Two R Drilling Co., Inc., 943 F.2d 576, 578 (5th Cir. 1991) (emphasis added). "[E]ven in multiple-claimant cases, admiralty courts still should allow state court claims to proceed under proper stipulations." Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp., 964 F.2d 1571, 1576 (5th Cir. 1992). Thus, it is possible that circumstances could arise in this matter where Claimants would be entitled to a jury trial as to the issues not within the exclusive jurisdiction of the admiralty court. Accordingly, it is respectfully submitted that Petitioner's motion to strike Claimants' jury demands should be denied.

33

## CONCLUSION

For the reasons discussed above, it is respectfully submitted that

Petitioner's motion to strike the Flotilla Doctrine affirmative defense and

Claimants' jury trial demands should be denied.

Respectfully submitted,

**HOBBIE, CORRIGAN & BERTUCIO, P.C.**

By ___/s/ Jacqueline DeCarlo, Esq._____
    Jacqueline DeCarlo, Esq. (JD-2676)
    125 Wyckoff Road
    Eatontown, New Jersey 07724
    Jacqueline DeCarlo, Esq. (2676)
    (732) 380-1515 (Phone)
    (732) 380-1720 (Fax)
    jdecarlo@hcblawyers.com (e-mail)
    ***Lead Counsel for Claimants***

Dated:  September 18, 2013