UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In the Matter of the Complaint<br><br>of<br><br>SEASTREAK, LLC, as Owner of the Vessel SEASTREAK WALL STREET for Exoneration from or Limitation of Liability | Civil Index No.:<br>2:13-cv-00315-WJM-MF |

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITIONER'S MOTION TO STRIKE THE AFFIRMATIVE DEFENSE THAT THE FLOTILLA RULE APPLIES AND TO STRIKE THE JURY DEMAND

**BLANK ROME LLP**
301 Carnegie Center, 3rd Floor
Princeton, New Jersey 08540
William R. Bennett, III, Esquire
Alan M. Weigel, Esquire *(admitted pro hac vice)*
Kevin J. Bruno, Esquire
New Jersey Resident Partner
(609) 750-7700 (Phone)
(609) 897-7395 (Fax)
KBruno@BlankRome.com (e-mail)

-and-

**KAUFMAN DOLOWICH & VOLUCK LLP**
Court Plaza South, 21 Main Street, Suite 251
Hackensack, New Jersey 07601
Gino A. Zonghetti, Esquire
(201) 708-8233 (Phone)
(201) 488-6652 (Fax)
gzonghetti@kdvlaw.com (e-mail)

*Attorneys for Plaintiff, SEASTREAK, LLC*

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

    POINT I ........................................................................................................................2

        THE FLOTILLA RULE DEFENSE IS LEGALLY INSUFFICIENT AND
        SHOULD BE STRUCK FROM CLAIMANTS' ANSWERS ................................2

        A.    Claimants' Flotilla Defense Cannot Succeed Under The Facts
              Alleged In Their Answers. ..............................................................................2

        B.    Seastreak's Motion For Summary Adjudication Is Proper. ..........................3

        C.    Seastreak's Motion Is Timely. .......................................................................4

    POINT II .......................................................................................................................5

        THE FLOTILLA RULE DOES NOT APPLY IN THIS CASE BECAUSE
        ONLY A SINGLE VESSEL WAS NECESSARY TO CARRY THE
        CLAIMANTS ON THE MORNING OF THE ALLISION ....................................5

    POINT III .....................................................................................................................10

        THERE IS NO BASIS FOR THE COURT TO EMPANEL AN
        ADVISORY JURY .................................................................................................10

CONCLUSION .........................................................................................................................10

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Bath & Body Works Brand Mgmt. v. Tri-Coastal Design Group, Inc.*,
No. 2:12-00957, 2012 U.S. Dist. LEXIS 170859 (D.N.J. Dec. 3, 2012)....2

*Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*,
377 F. 2d 724 (5th Cir. 1967)....8, 9

*Foret v. Transocean Offshore (USA), Inc.*,
No. 09-4567, 2011 U.S. Dist. LEXIS 96679 (E.D. La. Aug. 29, 2011)....3, 5

*Glenside West Corp. v. Exxon Corp.*,
761 F. Supp. 1100 (D.N.J. 1991)....2

*In re American Commercial Lines*,
353 F. Supp. 872 (D. Ky. 1973)....6

*In re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*,
836 F. 2d 750 (2d Cir. 1988)....10

*In re Complaint of Weeks Marine, Inc.*,
No. 8:00-cv-185, 2000 U.S. Dist. LEXIS 20494 (M.D. Fla. Nov. 6, 2000)....5

*In re Cross Contracting Co.*,
454 F. 2d 408 (5th Cir. 1972)....5

*In re Greenhill Petroleum Corp.*,
No. 96-338, 1997 U.S. Dist. LEXIS 14189 (E.D. La. Sept. 10, 1997)....6

*In re J.A.R. Barge Lines, L.P.*,
307 F. Supp. 2d 668 (W.D. Pa. 2004)....9

*In re Marquette Transp. Co., LLC*,
No. 10-4374, 2011 U.S. Dist Lexis 45228 (E.D. La. Apr. 18, 2011)....4

*In re Massman*,
No. 12 Civ. 1665, 2013 U.S. Dist Lexis 26536 (E.D. Mo. Feb. 27, 2013)....4

I*n re McCarthy Bros. Co./Clark Bridge*,
83 F.3d 821 (7th Cir. 1996)....10

*In re Merck & Co.*,
No. 08-CV-1974, 2010 U.S. Dist. LEXIS 62529 (D.N.J. June 23, 2010)....2

*In re Moran Towing Corp.*,
　No. 10 Civ. 4844, 2012 U.S. Dist. LEXIS 52589 (S.D.N.Y. April 13, 2012) ......................... 10

*In re Norfolk Dredging Co.*,
　No. 7:02-CV-110, 2003 U.S. Dist. LEXIS 24792 (E.D.N.C. Aug. 11, 2003) ........................... 7

*In re Two R Drilling Co., Inc.*,
　943 F.2d 576, 578 (5th Cir. 1991) ........................................................................................ 11

*In re U.S. Dredging Corp.*,
　264 F.2d 339 (2d Cir. 1959) ................................................................................................... 8

*In re War Admiral, L.L.C.*,
　No. 09-3217, 2011 U.S. Dist. LEXIS 133654 (E.D. La. Nov. 18, 2011) ................................ 5

*Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.*,
　964 F.2d 1571 (5th Cir. 1992) .............................................................................................. 11

*Matter of Falcon Workover Co., Inc.*,
　No. 98-0005, 1998 U.S. Dist LEXIS 17419 (E.D. La. Oct. 27, 1998) .................................... 4

*Norfolk Dredging Co. v. Wiley*,
　357 F. Supp. 2d 944 (E.D.Va. 2005) ...................................................................................... 4

*Sacramento Nav. Co. v. Salz*,
　273 U.S. 326 (1927) ................................................................................................................ 6

*Standard Dredging Company v. Kristiansen*,
　67 F. 2d 548 (2d Cir. 1933) ..................................................................................................... 6

*United States v. Kramer*,
　757 F. Supp. 397 (D.N.J. 1991) .............................................................................................. 2

*United States v. Marisol, Inc.*,
　725 F. Supp. 833 (M.D. Pa. 1989) .......................................................................................... 2

*United States v. Sensient Colors, Inc.*,
　580 F. Supp. 2d 369 (D.N.J. 2008) ......................................................................................... 2

*World Tanker Carriers Corp. v. M/V Ya Mawlaya*,
　No. 94-4190, 1996 U.S. Dist. LEXIS 760 (E.D. La. Jan. 18, 1996) ....................................... 4

OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(f)(2) ...................................................................................... 1

## INTRODUCTION

Petitioner SeaStreak, LLC ("SeaStreak") respectfully submits this memorandum of law in further support of its motion, pursuant to Rule 12(f)(2) of the Federal Rules of Civil Procedure, for an order striking the affirmative defenses of various claimants that the $7.6 million limitation fund established by Seastreak should be increased under the flotilla rule, and striking the jury demands made by various claimants, and in reply to Claimants' Memorandum of Law in Opposition to SeaStreak's motion ("Claimants Memo."). (Doc. No. 238.)

Claimants' opposition to SeaStreak's motion to strike the flotilla defense ignores one inescapable fact which is not open to question and needs no discovery. On the morning of the accident, Claimants were transported directly to Manhattan on <u>one</u> ferry, the SEASTREAK WALL STREET. Thus, only the SEASTREAK WALL STREET was necessary to fulfill the terms of SeaStreak's ticket contract with Claimants. Accordingly, the flotilla rule is not applicable and Claimants' flotilla defense fails. Further, Claimants' opposition to SeaStreak's motion to strike the jury demands provides no applicable legal authority for the Court to override the authority in this Circuit that this limitation action should proceed before the Court, without a jury, including the determination of the validity of Claimants' claims and, if required, the distribution of the limitation fund. Accordingly, SeaStreak respectfully submits that the Court should enter an order dismissing Claimants' flotilla defense and jury demands as a matter of law.

# ARGUMENT

## POINT I

### THE FLOTILLA RULE DEFENSE IS LEGALLY INSUFFICIENT AND SHOULD BE STRUCK FROM CLAIMANTS' ANSWERS

A. Claimants' Flotilla Defense Cannot Succeed Under The Facts Alleged In Their Answers.

Claimants' flotilla defense is insufficient as a matter of law because the defense cannot succeed under any set of facts which may be inferred from the allegations of the pleading. *See In re Merck & Co.*, No. 08-CV-1974, 2010 U.S. Dist. LEXIS 62529, *4-6 (D.N.J. June 23, 2010) (*citing Glenside West Corp. v. Exxon Corp.*, 761 F. Supp. 1100, 1115 (D.N.J. 1991)). Thus, despite Claimants' arguments to the contrary, (Claimants' Memo. at 8 – 11) the Court should grant SeaStreak's motion to strike the flotilla defense because the "insufficiency of the defense is clearly apparent." *United States v. Sensient Colors, Inc.*, 580 F. Supp. 2d 369, 374 (D.N.J. 2008). As this Court made clear in *United States v. Kramer*, 757 F. Supp. 397, 409-410 (D.N.J. 1991), a case relied on and extensively quoted by Claimants (Claimants' Memo. at 13), the Court should exercise it discretion and strike affirmative defenses "so legally insufficient that it is beyond cavil that [Claimants] could not prevail upon them."

A motion to strike in this case is appropriate because it will save the Court's and the parties' time and expense by making it unnecessary to litigate defenses which will not affect the outcome of the case. *See Glenside West Corp.* at 1114-1115; *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989). Granting SeaStreak's motion to strike also will avoid prejudice to SeaStreak by having to address affirmative defenses that will ultimately have no bearing on any issue at play in this case. *See Bath & Body Works Brand Mgmt. v. Tri-Coastal Design Group, Inc.*, No. 2:12-00957, 2012 U.S. Dist. LEXIS 170859, *3 (D.N.J. Dec. 3, 2012).

This is not simply a hypothetical concern. Claimants have already served extensive discovery on SeaStreak, asking, in part, for information about other ferries operated by Seastreak. If Claimants are allowed to proceed with their flotilla defense, this discovery burden will undoubtedly increase.

Such discovery about other ferries is unnecessary. There is one undeniable fact that needs no further discovery, alleged in Claimants' Answers, which makes Claimants' flotilla defense completely insufficient as a matter of law: only one ferry was necessary to transport Claimants from New Jersey to New York on the morning of the accident. No factual discovery is necessary to confirm this fact and, thus, no factual discovery can alter the conclusion that the affirmative defense asserted by certain claimants requiring application of the flotilla rule is insufficient as a matter of law and cannot succeed under any set of facts that further discovery may reveal. Accordingly, it is respectfully submitted that the Court should strike those affirmative defenses from the claimants' answers.

B.  Seastreak's Motion For Summary Adjudication Is Proper.

Notwithstanding Claimants arguments to the contrary (Claimants' Memo. at 8 – 11), where there is no dispute about the applicable legal doctrine or the facts, the applicability of the flotilla doctrine may be determined by summary adjudication. *See Foret v. Transocean Offshore (USA), Inc.*, No. 09-4567, 2011 U.S. Dist. LEXIS 96679, *12-13 (E.D. La. Aug. 29, 2011) (*citing In re A.& J. Towing*, No. 97-0548, 1997 U.S. Dist. LEXIS 7878 (E.D. La. May 29, 1997)).

Here, Claimant's opposition to SeaStreak's motion presents no disputed question of law. Indeed, Claimants cite many of the same cases SeaStreak cited in its Memorandum of Law in Support of its motion. Moreover, Claimants do not allege that more than one ferry was

3

involved in their transportation to New York. Thus, there is no dispute about the self-evident fact that claimants boarded one ferry and only one ferry was necessary to transport them to New York.

The cases cited by Claimants in support of their argument that discovery is necessary before ruling on SeaStreak's motion to strike the flotilla defense (Claimants' Memo at 9 – 10) are inapposite. *First*, all of the cases cited by Claimants, *In re Massman*, No. 12 Civ. 1665, 2013 U.S. Dist Lexis 26536 (E.D. Mo. Feb. 27, 2013), *Norfolk Dredging Co. v. Wiley*, 357 F. Supp. 2d 944 (E.D.Va. 2005), *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, No. 94-4190, 1996 U.S. Dist. LEXIS 760 (E.D. La. Jan. 18, 1996), *In re Marquette Transp. Co., LLC*, No. 10-4374, 2011 U.S. Dist Lexis 45228 (E.D. La. Apr. 18, 2011), and *Matter of Falcon Workover Co., Inc.*, No. 98-0005, 1998 U.S. Dist LEXIS 17419 (E.D. La. Oct. 27, 1998), involve motions to increase the limitation fund, a different procedural posture than SeaStreak's motion.[1] *Second*, in all but one of the cases cited by Claimants, the injured party had been working on several vessels on the day of his accident, whereas in the present case, the Claimants have admitted that they traveled on one ferry, the SEASTREAK WALL STREET.[2] *Finally*, in all but one of the cases cited by Claimants, there was only a single claimant, not the multiple claimants in the present proceeding.

C.  Seastreak's Motion Is Timely.

Claimant's argument that SeaStreak's motion is untimely (Claimants' Memo at 8, n.2) has no basis in fact. SeaStreak raised the issue of the insufficiency of the flotilla defense in its letter to the Court on May 17, 2013, one day after the period for filing claims had ended. (See

---

[1] Indeed, Claimants' reliance on *Norfolk Dredging Co.,* 357 F. Supp.2d at 951, is completely inapt. There, the court denied the motion for an increase in the limitation fund because claimants agreed to set aside their motion aside. Claimants' quote conveniently omits this context to make it look like the case supports their argument when it does not.

[2] *World Tanker Carriers* involved a collision between two vessels and a motion to increase the limitation fund on the basis of tonnage, an argument not advanced by Claimants here.

4

Doc. No. 189.)  Claimants' response the next day did not raise any time bar issues.  (See Doc. No. 190.)  SeaSteak's motion to strike was subsequently timely filed pursuant to the briefing schedule ordered by the Court.  (Doc. No. 220.)

## POINT II

### THE FLOTILLA RULE DOES NOT APPLY IN THIS CASE BECAUSE ONLY A SINGLE VESSEL WAS NECESSARY TO CARRY THE CLAIMANTS ON THE MORNING OF THE ALLISION

Claimants do not dispute that for the flotilla rule to be applicable the vessels purported to make up the flotilla must at the time of the fault giving rise to the limitation proceeding be owned by the same person, under a single command, and also have been engaged in a common enterprise.  *Foret v. Transocean Offshore (USA), Inc.*, No. 09-4567, 2011 U.S. Dist. LEXIS 96679, * 11 (E.D. La. Aug. 29, 2011) (*citing Cenac Towing Co., Inc. v. Terra Res., Inc.,* 734 F.2d 251, 254 (5th Cir. 1984)); *In re Complaint of Weeks Marine, Inc.*, No. 8:00-cv-185, 2000 U.S. Dist. LEXIS 20494, *8 (M.D. Fla. Nov. 6, 2000).

Claimants, however, misconstrue the "common enterprise" requirement and mistakenly attempt to expand its reach to include all vessels owned by SeaStreak.  The case law clearly establishes that a flotilla will only be found to have existed where each vessel alleged to be part of the flotilla was engaged in the same venture at the same time and where all of the attending vessels were necessary for performance of their owner's contract.  *In re Cross Contracting Co.*, 454 F.2d 408, 411 (5th Cir. 1972).  Thus, the work of each vessel making up a flotilla must be "necessary to performance of the contract." *In re War Admiral, L.L.C.*, No. 09-3217, 2011 U.S. Dist. LEXIS 133654, *12 (E.D. La. Nov. 18, 2011).  Here the work of one vessel was all that was necessary to perform the contract.

5

Claimants suggest that the "necessary" element is subsumed into the common enterprise requirement and "does not warrant a separate discussion." (Claimants' Memo at 22, n. 4.) But Claimants' analysis avoids the key questions the Court must answer in deciding this motion: What was the nature of the common enterprise, if any, involving SeaStreak's vessels, and was more than one vessel necessary for the performance of SeaStreak's contract on the morning of January 9, 2013.[3]

In *Sacramento Nav. Co. v. Salz*, 273 U.S. 326, 332 (1927), the Supreme Court asked the same question the Court must answer here: "[W]hat constituted the vessel[s] by which the contract of transportation was to be effected?" The Supreme Court went on to hold that if more than one vessel was involved, the limitation petitioner must surrender the "<u>combined means</u> by which the company undertook the transport." *Id.* (emphasis added). Courts have subsequently established the flotilla rule where, if a contractual relationship exists between the vessel owner and the claimant, the vessel owner is required to surrender to the limitation fund <u>only</u> the vessels devoted to the performance of the contract at the time of the fault causing the loss, not every vessel in the owner's fleet that could have been used in the contract. *Standard Dredging Company v. Kristiansen*, 67 F.2d 548 (2d Cir. 1933). Further, the flotilla doctrine applies <u>only</u> to those vessels actually engaged in and devoted to the performance of the contract or common enterprise in question <u>at the time</u> of the fault giving rise to the limitation proceeding. *In re Greenhill Petroleum Corp.*, No. 96-338, 1997 U.S. Dist. LEXIS 14189, at *5 (E.D. La. Sept. 10, 1997) ("common venture" limited "to the particular task at hand, not all work contemplated by the contract"). The vessels included in the common venture are <u>only</u> those needed to complete the contract. *In re American Commercial Lines*, 353 F. Supp. 872, 874 (D. Ky. 1973) ("in a

---

[3] SeaStreak submits that, in deciding this motion, it is unnecessary for the Court to consider the issues of common ownership or common command. A finding that no other vessels were necessary for the transportation of Claimants on the morning of the accident is sufficient to grant SeaStreak's motion striking the flotilla defense.

consensual relationship a party to a contract should not be permitted to limit his liability to less than the value of all of the vessels he needed to complete his promise.")(emphasis added).

Thus, in *In re Norfolk Dredging Co.*, No. 7:02-CV-110, 2003 U.S. Dist. LEXIS 24792, *5 (E.D.N.C. Aug. 11, 2003), the court found that the scope of the "common enterprise" was limited to "the particular task, venture, or work at hand, rather than to all work contemplated by the . . . contract." *Id.* The Court noted that the two different dredging projects under the contract were either complete or halted at the time of the injury, and thus only the task at hand that day-preparing to move a booster barge-could be considered in determining which vessels could be valued for inclusion in the limitation fund. *Id.* The court found that only three of the numerous vessels "played a necessary and important part in the relevant activity" such that they constituted a "flotilla" whose value should be included in the limitation fund. *Id.* at *5-*6 9emphasis added).

Claimants assert they were involved in a contractual relationship with SeaStreak, embodied in the ticket which governed the carriage of claimants as passengers. But the tickets in question were for the single trip from New Jersey to New York aboard a single ferry. Only one vessel was involved in fulfilling SeaStreak's obligations to Claimants under that ticket: the SEASTREAK WALL STREET. As importantly, only SEASTREAK WALL STREET was actually engaged in and devoted to the performance of whatever obligations arose under the ticket in question at the time of the fault giving rise to the limitation proceeding.

Claimants argue, however, that SeaStreak's four ferries were used "interchangeably" to daily transport New Jersey residents to and from Highlands/Atlantic Highlands and Manhattan in a "commuter passageway" and, thus, these vessels were a necessary part of a common venture such that their value should be included in SeaStreak's limitation fund pursuant to the flotilla

7

doctrine.[4] (*See, e.g.,* Claimants' Memo at 21 –26.)  But this argument both misses the point of what is "necessary" under the flotilla rule and stretches the concept of a common venture far beyond the facts of any other case.[5]  Whether SeaStreak used the vessels interchangeably on different days or different routes or even reserved the right to do so, there is no dispute that on the morning of the accident, Claimants were being transported to Manhattan on one ferry:  the SEASTREAK WALL STREET.  Thus, because a passenger can, and did, ride one ferry at a time, there can be no issue that any other of the vessels operated by SeaStreak were necessary for the performance of any alleged ticket contract of carriage.  The flotilla rule cannot be applicable here because there was no common enterprise involving any other vessel operated by SeaStreak, and, because only SEASTREAK WALL STREET was devoted to the carriage of the claimants at the time of the allision – no other vessels were involved, nor were required to fulfill the obligations of SeaStreak pursuant to the ticket. In fact, no other vessels could have been involved in fulfilling the obligations under the ticket.

*In re U.S. Dredging Corp.*, 264 F.2d 339, 341 (2d Cir. 1959), *cert. denied,* 360 U.S. 932 (1959), and *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724 (5th Cir. 1967), relied on extensively by Claimants, are directly on point, but contrary to Claimants' argument.  In fact, these cases support SeaStreak's position.  In both cases, the additional vessels

---

[4] SeaStreak disputes that the allegations in Claimants' Answers that SEASTREAK WALL STREE was "part of a joint venture involving several vessels" is a factual allegation that must be taken as true and viewed in the light most favorable to Claimants. (Claimants' Memo. at 26.)  To the extent this allegation goes to the "common enterprise" requirement of the flotilla rule, it is a legal, not factual allegation and not entitled to the weight Claimants ascribe to it.  Further, even if accepted as true for purposes of resolving this motion, it is beyond cavil that SEASTREAK WALL STREET was the only vessel involved in the allision, and the only vessel engaged in and devoted to the performance of the carriage of claimants at the time of the allision.

[5] It is notable that there are no other limitation cases in which a ferry operator was required to surrender the value of its entire fleet of vessels under the flotilla rule.  Even in the Staten Island ferry accident, which Claimants ask the Court to follow, the City of New York was not required to surrender the value of the other ferries operating on the same route.  It should not be lost on the Court that the Staten Island ferry accident involved a single ferry striking a pier and no claim that the flotilla doctrine required the limitation fund to include New York City's other ferries was advanced, since obviously without merit.

8

sought to be included in the limitation fund were necessary for the performance of the relevant contracts because the vessels were used to transport shore-based workers, tools or materials to the sites where the contracts were being performed.  Thus, in both cases the courts found that all the attending vessels were necessary to the performance of their owner's contracts.  *In re U.S. Dredging* at 340; *Brown & Root Marine Operators* at 727.  Here, there were no other "attending" vessels.  Instead, Claimants were transported to Manhattan on one vessel, and one vessel was necessary to transport Claimants, not all four vessels operated by SeaStreak at other times or on other routes.

Further, contrary to Claimants' arguments, *The George W. Pratt*, 76 F.2d 902, 904 (2d Cir. 1935), also is directly on point.  In that case, which involved a contract for the towage of a barge, the court held that the scope of the common enterprise requirement is not so broad as to mean that all the vessels used successively in performing a contract are to be deemed collectively one vessel for purposes of surrender in limitation of liability.  *Id.* at 903.  To the contrary, the court established that the vessels to be surrendered are those devoted to performance of the contract at the particular time when the fault which causes the loss is committed.  *Id.*  Thus, the vessel owner was not required to surrender anything more than the vessels "devoted as a unitary instrumentality to the undertaking at the time when the fault is committed." *Id.* at 904.

Were claimants' argument valid it would effectively undermine limitation of liability as a defense in virtually any commercial maritime casualty.  Vessel owners, including ferry boat operators, tug and barge operators, fishing boat operators, and ocean vessels owners commonly own more than one vessel, which are interchangeable to perform a contract with a client.  If multiple ownership, and interchangeability were sufficient to require inclusion of the value of all vessels owned in the limitation fund, the Limitation Act would essentially be rendered without

any effect.  Claimants' argument is wholly inconsistent with the law, and claimants' are unable to cite a single case presenting the facts at issue here that supports its argument.

The conclusion is inescapable that there was no flotilla at the time of the accident because there was no common enterprise and only one vessel was involved in the casualty giving rise to the limitation proceeding.  Accordingly, the limitation fund is correctly established based upon the value of the SEASTREAK WALL STREET.  Any affirmative defenses asserting otherwise are insufficient as a matter of law and should be stricken.

## POINT III

### THERE IS NO BASIS FOR THE COURT TO EMPANEL AN ADVISORY JURY

This case was initiated by SeaStreak and brought pursuant to the Limitation of Liability Act and Claimants have filed claims in the action.  According to the law in this Circuit as cited in SeaStreak's motion which Claimants neither challenge nor distinguish, the filed claims are adjudicated by the District Court, sitting without a jury.  *See, e.g., In re J.A.R. Barge Lines, L.P.*, 307 F. Supp. 2d 668, 673-674 (W.D. Pa. 2004)(striking jury demand).  After determining whether SeaStreak may limit its liability, the court, without a jury, determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.  *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 131-132 (3d Cir. 1997).

Claimants' complaints that the Limitation Act is "a relic of an early era" (Claimants' Memo. at 16 – 18) or that SeaStreak took unfair advantage of the Act by filing in this Court rather than waiting for Claimants to file in state court (Claimants' Memo. at 29) are completely nonsensical and irrelevant to the Court's decision as to whether Claimants are entitled to a jury to hear their claims.  Indeed, Claimants provide no applicable or persuasive legal grounds for this Court to empanel a jury, either advisory or otherwise.

686545.00614/7290024v.1

This limitation matter should proceed before the Court without a jury. As the court explained in *In re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755 (2d Cir. 1988), as case relied upon by Claimants (Claimants' Memo. at 30), there is "no right to a jury in actions instituted in admiralty," and once a limitation action is commenced, "claimants are enjoined from pursuing common law actions in other forums." This would be the same outcome even if Claimants had filed first in state court. SeaStreak's filing of its limitation action would have enjoined those cases and forced Claimants to file in this action. *See* I*n re McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 826 (7th Cir.), cert. denied, 519 U.S. 950 (1996) ("Claimants . . . lose their right to pursue common law remedies before a jury when forced into admiralty court under the Limitation Act.")

Claimants have provided no legal authority applicable in this Circuit which would allow the Court to empanel a jury. Instead, Claimants ask the Court to adopt the reasoning of two cases from the Southern District of New York. (Claimants' Memo. at 31 – 32.) But both cases are not persuasive here because both are distinguishable. In *Complaint of Great Lakes Dredge & Dock*, 895 F. Supp. 604 (S.D.N.Y. 1995), federal jurisdiction based on diversity of citizenship existed independently of the admiralty limitation claims, giving the claimants a right to a jury trial on the non-maritime claims. No such federal diversity jurisdiction exists here. In *In re Moran Towing Corp.*, No. 10 Civ. 4844, 2012 U.S. Dist. LEXIS 52589 (S.D.N.Y. April 13, 2012), the seaman claimant had a statutory right to a jury trial on his Jones Act claim. Claimants in the present proceeding have no such statutory rights.

Claimants also provide no legal authority for this Court to empanel an advisory jury. Although Claimants argue that courts sitting in Admiralty frequently adopt this practice (Claimants' Memo. at 32), they provide no reported legal authority where such a practice has

11

been adopted in this circuit. Instead, they urge the Court to follow the procedure used in the Staten Island ferry accident, but without any legal reasoning as to why the Court should do so.

The Fifth Circuit cases cited by Claimants also are distinguishable and, thus, are inapplicable and unpersuasive. In both *In re Two R Drilling Co., Inc.*, 943 F.2d 576,578 (5th Cir. 1991) and *Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.*, 964 F.2d 1571, 1576 (5th Cir. 1992), the district courts allowed the state law claims to proceed after claimants had offered stipulations which Claimants in the present proceeding have not offered.

Claimants are not entitled to have their claims adjudicated by a jury. Accordingly, the Court should strike all jury demands and proceed to a trial on this matter before the Court alone.

## CONCLUSION

Based on the foregoing, the Court should enter an order (1) striking the affirmative defense of any claimant who asserts that the $7.6 million limitation fund established by SeaStreak should be increased under the flotilla rule; (2) striking the jury demand made by any claimant; and (3) for such other and further relief in favor of SeaStreak as the Court deems just and proper.

Respectfully Submitted,

**BLANK ROME LLP**

By:   /s/ *William R. Bennett*
William R. Bennett, III, Esquire
Alan M. Weigel, Esquire
*(admitted pro hac vice)*
Kevin J. Bruno, Esquire
New Jersey Resident Partner
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
(609) 750-7700 (Phone)
(609) 897-7395 (Fax)
KBruno@BlankRome.com (e-mail)

-and-

**KAUFMAN DOLOWICH & VOLUCK LLP**
Gino A. Zonghetti, Esquire
Court Plaza South, 21 Main Street, Suite 251
Hackensack, New Jersey 07601
(201) 708-8233 (Phone)
(201) 488-6652 (Fax)
gzonghetti@kdvlaw.com

***Attorneys for Plaintiff, SEASTREAK, LLC***

Dated: October 2, 2013