UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF<br><br>SEASTREAK, LLC, AS OWNER OF THE VESSEL SEASTREAK WALL STREET FOR EXONERATION OR LIMITATION OF LIABILITY | Civ. No. 2:13-00315 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Petitioner Seastreak, LLC ("SeaStreak") brings this action seeking exoneration from or limitation of liability under the Limitation of Liability Act (the "Limitation Act"), 46 U.S.C. § 30501 et seq. This matter comes before the Court on (1) Petitioner's motion to strike the affirmative defenses based on the flotilla doctrine and the jury demands from Claimants' answers, and (2) Petitioner's motion to disqualify counsel from representing multiple Claimants. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Petitioners motion to strike is **DENIED** and (2) Petitioner's motion to disqualify counsel is **DENIED**.

**I.    BACKGROND**

This maritime case involves the SEASTREAK WALL STREET (the "Vessel"), a passenger ferry that allided with Pier 11 in New York City on January 9, 2013. Compl. ¶ 3, ECF No. 1. The allison allegedly caused injuries to a number of the 326 passengers on board. Compl. ¶ 4.

The Limitation Act provides that when a maritime accident occurs "without the privity or knowledge of [the] owner," the shipowner's liability "shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." 46 U.S.C. § 30505. To receive protection under the Limitation Act, a shipowner facing potential liability must file a complaint for limitation of liability in a federal district court and deposit an amount equal to the value of the vessel and its pending freight – the limitation fund – with that court. Fed. R. Civ. P. Supp. Rule F(2). The shipowner may also demand exoneration from liability in the complaint. *Id.* The court then stays all other proceedings against the shipowner and receives all claims. 46 U.S.C. § 30505; Fed. R. Civ. P. Supp. Rule F(4).

On January 16, 2013, the Vessel's owner, SeaStreak, filed a Complaint under the Limitation Act in this Court seeking either exoneration from liability or to limit its liability to the value of its interest in the Vessel – $7.6 million.  Compl. ¶¶ 7, 11.  On January 16, 2013, the Court entered an interim order limiting liability to the value of the Vessel and directing potential claimants to file claims by May 16, 2013.  Forty-six claims were filed prior to that deadline, some with multiple Claimants.  The total value of the claims filed exceeds the $7.6 million limitation.  Most Claimants also filed answers to SeaStreak's Complaint.  *See, e.g.*, The Claim and Answer of John Urbanowitcz ("Urbanowitcz Answer"), ECF No. 10.

## II.   MOTION TO STRIKE

In their respective answers, Claimants rely upon an affirmative defense known as the "flotilla doctrine" to argue that the limitation fund should be increased to include the value of every ferry owned by SeaStreak.  *See, e.g.*, Urbanowitcz Answer, Aff. Def. ¶ 4.  The answers also include jury demands.  *See, e.g.*, Urbanowitcz Answer at 5.

SeaStreak, in a motion filed on August 27, 2013, seeks to strike both the affirmative defenses under the flotilla doctrine and the jury demands.  Pet'r's Mot. to Strike, ECF No. 225.  Seastreak argues that the flotilla doctrine does not apply because the allision involved a single vessel that was not part of any common enterprise or venture.  Seastreak further argues that claimants have no right to a jury trial in a proceeding under the Limitation Act.

### A.  The Affirmative Defenses under the Flotilla Doctrine

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  An affirmative defense is insufficient if it is not recognized as a legal defense to the cause of action or it cannot succeed under any set of facts that may be inferred from the allegations of the pleading. *Tonka Corp. v. Rose Art Industries, Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993) (citing *Total Containment, Inc. v. Environ Products, Inc.*, No. 91–7911, 1992 WL 208981 at *1 (E.D. Pa. Aug.19, 1992)). Striking legally insufficient defenses saves time and expense by making it unnecessary to litigate defenses that will not affect the outcome of the case. *Glenside West Corp. v. Exxon Co.*, 761 F. Supp. 1100, 1115 (D.N.J.1991).

However, a court should grant a motion to strike a defense only where the "insufficiency of the defense is clearly apparent." *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986).  Courts generally disfavor motions to strike because they require the court to evaluate legal issues before the factual background of a case has been developed through discovery.  *See United States v. Sensient Colors, Inc.*, 580 F. Supp. 2d 369, 374 (D.N.J. 2008).  Thus, a court should deny the motion where the sufficiency of a defense depends on disputed issues of fact. *Glenside*, 761 F. Supp. at 1115.  Moreover,

even where the facts are not in dispute, a motion to strike is an inappropriate means of testing the legal merits of a defense. *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 218 (D.N.J. 1993). Courts should only determine disputed issues of fact or substantial questions of law after opportunity for discovery and a hearing on the merits. *In re Merck & Co.*, No. 08–1974, 2010 WL 2557564, at *3 (D.N.J. June 23, 2010).

Petitioner moves to strike the affirmative defense under the flotilla doctrine from Claimants' answers. Typically, in a proceeding under the Limitation Act, the shipowner's liability is limited to the value of the vessel on which the injury occurred plus any pending freight. However, if the flotilla doctrine applies, a court may increase the limitation fund to include the value of other vessels. *Complaint of Patton-Tully Transp. Co.*, 715 F.2d 219, 222 (5th Cir. 1983).

The flotilla doctrine's applicability depends on the legal relationship between the shipowner and the injured party. Where the damage was inflicted tortiously, the shipowner must surrender only the value of the "offending" or "actively responsible" vessel. *Liverpool, Brazil and River Plate Steam Nav. Co. v. Brooklyn Eastern District Terminal*, 251 U.S. 48, 52 (1919). If, however, the shipowner was engaged in the performance of a contract with the injured party at the time of the wrong, surrender of the combined means by which the owner undertook performance of the contract is required. *Sacramento Nav. Co. v. Salz*, 273 U.S. 326, 332 (1927). Attending vessels necessary to the performance of the contract will be included in the "flotilla." *Id.* at 329-30; *In re Drill Barge No. 2*, 454 F.2d 408, 412 (5th Cir. 1972); *Petition of United States Dredging Corp.*, 264 F.2d 339, 341 (2d Cir. 1959). If the attending vessel is considered part of the flotilla, then the value of that vessel will be added to the limitation fund.

Courts generally consider three elements when determining whether a particular vessel should be included in the flotilla: (1) common ownership, (2) common enterprise, and (3) single command. *Valley Line Co. v. Ryan*, 771 F.2d 366, 376 (8th Cir. 1985); *Cenac Towing Co. v. Terra Resources, Inc.*, 734 F.2d 251, 254 (5th Cir. 1984). Whether the flotilla doctrine applies is thus a fact-specific inquiry. *See Cenac Towing Co.*, 734 F.2d at 254 (refusing to determine whether the flotilla doctrine applied based on the limited record before the court).

Here, whether or not the flotilla doctrine applies is not "clearly apparent." Claimants allege that they were boarded the Vessel on the day of the allision pursuant to a contract – the SeaStreak passenger ticket. Furthermore, in addition to the Vessel, Claimaints maintain that SeaStreak owns three additional high-speed passenger ferries – SEASTREAK NEW YORK, SEASTREAK NEW JERSEY, and SEASTREAK HIGHLANDS. Whether the flotilla doctrine applies will depend upon whether the vessels owned by SeaStreak were in some way interdependent in executing the SeaStreak passenger ticket contract. *See In re War Admiral, L.L.C.*, No. 09-3217, 2011 WL 5826083 (E.D. La. Nov. 18, 2011). It will also depend on whether the ferries were under a single command. These are disputed factual issues. Furthermore, the existing case law

in this area has involved vastly different contexts. And there is a paucity of Third Circuit precedent regarding the flotilla doctrine. Accordingly, resolving these issues may also involve a substantial question of law. Thus, the question of whether the additional ferries should be included in the flotilla is not properly disposed of on a motion to strike, and the Court will deny the motion.

### B. The Jury Demands

Petitioner also moves to strike Claimants' jury demands, arguing that Claimants have no right to a jury trial in a Limitation Act proceeding. "There is no right to a jury in actions instituted in admiralty, and the claimants [in a Limitation Act proceeding] are enjoined from pursuing common law actions in other forums." *Gorman v. Cerasia*, 2 F.3d 519, 524 (3d Cir. 1993). Thus, under the Limitation Act, the district court, sitting in admiralty without a jury, adjudicates all claims. *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 132 (3d Cir. 1997) (citations omitted). This result directly conflicts with 28 U.S.C. § 1333, which provides that the exercise of admiralty jurisdiction will not deny suitors their right to common law remedies. *Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755 (2d Cir. 1988) (citations omitted).

In response to this conflict, courts have created two exceptions to the admiralty court's exclusive jurisdiction over Limitation Act proceedings. *Gorman*, 2 F.3d at 524. The first applies where the value of the vessel and its cargo exceeds the aggregate of the total number of claims filed against the owner. *Id.* (citing *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152 (1957). The second arises when a single claimant brings an action against the shipowner seeking damages in excess of the vessel's value. *Id.*

SeaStreak initiated this case pursuant to the Limitation Act. Claimants thus do not have a right to a jury trial unless one of the two exceptions applies to this case. Currently neither exception applies, because multiple claimants are seeking damages well in excess of the Vessel's value. However, this could change prior to trial depending on how many and which claims settle, and whether the limitation fund is increased under the flotilla doctrine. Accordingly, SeaStreak's motion to strike the jury demands is premature, and the Court will deny that motion.

### III. MOTION TO DISQUALIFY COUNSEL

In a separate motion, SeaStreak seeks to disqualify counsel from representing multiple claimants in this action. Pet'r's Mot. to Disqualify Counsel, ECF No. 224. Eight law firms, including Hobbie, Corrigan & Bertucio, P.C. ("Hobbie") represent multiple claimants. Hobbie represents fourteen individual claimants and eleven of their respective spouses. Aff. of Gino A. Zonghetti ("Zonghetti Aff.") Ex. A, ECF No. 224-2. Additionally, the Court has designated Norman M. Hobbie, Esq. and Jacqueline DeCarlo, Esq., each of Hobbie, as Lead Counsel for Claimants (the "Lead Counsel Order"). Order, June 24, 2013, ECF No. 205.

4

SeaStreak argues that because Claimants are competing for pieces of the $7.6 million limitation fund, they have conflicting interests and should have separate attorneys. In support of its position, SeaStreak cites a statement that Ms. DeCarlo made to the Court, which was that "we're not going to negotiate assuming there's a 7.6 limitation." Zonghetti Aff. Ex. B ¶¶ 22:16-17. SeaStreak also cites Paragraph 6 of the Lead Counsel Order as demonstrating a conflict of interest. That Paragraph reads as follows:

> 6. Any Claimant's counsel who commences active settlement negotiations with the Petitioner shall also advise Claimant's Lead Counsel of same so that a determination can be made (among allied Claimant's counsel) as to the propriety of any such counsel's participation in certain joint strategy discussions.

SeaStreak argues that, under this Paragraph, counsel for multiple Claimants "face an ethical minefield – whether to forego settlement discussions ostensibly in their client's best interests or risk forfeiting vital strategic information." Mem. Supp. Pet'r's Mot. to Disqualify Counsel at 9, ECF No. 224-5. Petitioner further maintains that the conflict of interest in this case is unwaivable, because SeaStreak may call one Claimant to testify against another on the issue of damages. For example, SeaStreak may argue that a Claimant Doe was injured because she was standing at the time of the allision, despite warnings that the Vessel was about to dock. SeaStreak might thus call another Claimant to testify that that Claimant Doe was standing. Accordingly, Petitioner argues that the law firms representing multiple Claimants should be disqualified from representing Claimants in this action.

When making a motion to disqualify counsel, the "party seeking to disqualify counsel carries a heavy burden and must satisfy a high standard of proof." *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F. Supp. 241, 246 (D.N.J. 1998). "Motions to disqualify are viewed with disfavor as disqualification is a drastic remedy with often far-reaching, sometimes devastating implications." *Id.* Courts should therefore "hesitate to impose [disqualification] except when absolutely necessary." *Carlyle Towers Condo. Ass'n, Inc. v. Crossland Savings, FBS*, 944 F. Supp. 341, 345 (D.N.J. 1996). Accordingly, in determining whether to disqualify counsel, a court must closely and carefully scrutinize the facts of each case to prevent unjust results. *See Montgomery Acad. v. Kohn*, 50 F. Supp. 2d 344, 349 (D.N.J. 1999).

"[T]he court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). The court "should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Id.* Furthermore, "when a motion to disqualify appears to have been made primarily for strategic purposes or would provide the movant with an undue tactical advantage, courts

5

'have been extremely reluctant to disqualify attorneys.'" *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1118 (D.N.J. 1993) (citing *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 430 (D. Del. 1986)).

SeaStreak argues that the representation of multiple Claimants in this case violates New Jersey Rule of Professional Conduct 1.7, because it creates a concurrent conflict of interest. Under RPC 1.7(a), a concurrent conflict of interest exists if "the representation of one client will be directly adverse to another client" or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer." However RPC 1.7(b) permits representation, notwithstanding a concurrent conflict of interest if:

> (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;
>
> (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (3) the representation is not prohibited by law; and
>
> (4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

The Court rejects SeaStreak's assertion that multiple representation is preventing settlements, warranting disqualification. In support of this argument, SeaStreak claims that Ms. DeCarlo has indicated that Hobbie will not negotiate settlements on behalf of its clients if the $7.6 million limitation on liability is upheld. SeaStreak bases this argument on Ms. DeCarlo's statement that "we're not going to negotiate assuming there's a 7.6 limitation." Zonghetti Aff. Ex. B ¶¶ 22:16-17. However, the remainder of the transcript containing that statement indicates that SeaStreak has taken Ms. DeCarlo's statement out of context. The transcript indicates that Hobbie is willing to negotiate settlements, but will not base those negotiations on the assumptions that the limitation will be upheld and that only a total of $7.6 million will be available to compensate all claims. Basically, Hobbie is willing to settle, but will not assume that it is going to lose the pending case, which would seem to be a reasonable position. Furthermore, Hobbie, as Lead Counsel, was involved in creating the settlement procedure that the parties are currently utilizing, resulting in numerous settlements. *See* Order Regarding Distribution of Funds, September 17, 2014, ECF No. 235. Finally, SeaStreak's argument regarding Paragraph 6 of the Lead Counsel Order is speculative. Contrary to SeaStreak's assertion, nothing in

that Paragraph states that a firm participating in settlement discussions will be excluded from joint strategy discussions.

The Court also rejects SeaStreak's argument that, because Claimants may be called to testify against each other during the damages portion of the trial, multiple representation in this case creates an unwaivable conflict. In addition to being based on conjecture, this argument overstates RPC 1.7, which prevents waiver where the representation will involve "the assertion of a claim by one client against another client . . . in the same litigation or proceeding." RPC 1.7(b)(4) (emphasis added).

The Court acknowledges the possibility that a conflict of interest may arise later, during the damages portion of the trial, if the limitation fund is upheld. *See Complaint of Cap'n Rick Corp.*, 525 F. Supp. 31, 35 (S.D.N.Y. 1981) ("While the interests of the claimants as to the liability of the CAP'N RICK Corp. were joint, it was improper for Phillips to represent each claimant with respect to the division of the settlement fund, certainly without specific disclosure of the conflict and an approval by each of his clients."). However, this conflict is waivable. *See id.*

It is unclear whether the firms representing multiple Claimants have obtained waivers regarding the potential conflict. Assuming that they have not, the Court finds that disqualification is not currently warranted based on the facts of this case. Although Claimants could eventually have competing interests depending upon the outcome of several issues, their interests are very much aligned concerning SeaStreak's liability and whether the Limitation Act applies. The Court also recognizes that allowing Claimants to retain their counsel of choice is an important countervailing policy to disqualification. *Miller*, 624 F.2d at 1201. Finally, the Court notes its concern that this motion, in which SeaStreak asserts a conflict on behalf of opposing counsels' clients, was made largely for strategic purposes. Accordingly, the Court will deny SeaStreak's motion. However, in the abundance of caution and in recognition of the potential for conflict down the road, the Court requests that each firm representing multiple Claimants provide the Court with a certification stating that that it has obtained informed consent from its respective clients. Should the Court not receive these certifications within sixty days from the date of this Opinion, it would be willing to entertain another motion to disqualify.

## IV. CONCLUSION

For the reasons stated above, Petitioner's motion to strike and motion to disqualify counsel are both **DENIED**.  An appropriate order follows.

　/s/ William J. Martini　
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 27, 2013**